COMMONWEALTH vs. GLORIA CLAUDIO.

No. 88-P-193.

Bristol. June 3, 1988. — July 15, 1988.

Present: KASS, WARNER, & FINE, JJ.

Further appellate review granted, 403 Mass. 1104 (1988).

*Controlled Substances. Practice, Criminal,* Instructions to jury, Presumptions and burden of proof. *Due Process of Law,* Presumptions, Burden of proof, Inference. *Constitutional Law,* Assistance of counsel.

Where a defendant charged with trafficking in heroin had admitted possessing and selling the drug and had not contested possession of the amount required for trafficking, any error in the judge's instruction to the jury that they must infer the presence of heroin in the quantity specified in the Commonwealth's chemical analysis certificates unless the defendant produced some contrary evidence was harmless beyond a reasonable doubt. [219-221]

A single apparent misstatement by defense counsel during an otherwise consistent and forceful closing argument at a criminal trial did not amount to ineffective assistance of counsel, such as would require reversal of the defendant's conviction. [221-222]

INDICTMENT found and returned in the Superior Court Department on February 11, 1986.

The case was tried before *Elizabeth J. Dolan,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Cynthia A. Vincent,* Assistant District Attorney (*Dana Curhan,* Assistant District Attorney, with her) for the Commonwealth.

FINE, J. After a Superior Court jury trial, the defendant was convicted of trafficking in heroin (G. L. c. 94C, § 32E[c][1], as appearing in St. 1983, c. 571, § 3). On appeal, the defendant claims that (1) the jury instructions impermissibly shifted to her the burden of disproving certain elements of the crime and (2) one misstatement by defense counsel in closing argument amounted to ineffective assistance of counsel. We affirm.

On January 17, 1986, New Bedford police, authorized by a warrant, executed a search of an apartment occupied by the defendant. After having been read her "Miranda rights" in Spanish, the defendant was asked if there were any drugs in the apartment, and she answered affirmatively. She handed to a police officer a pocketbook containing, among other things, 678 plastic bags containing heroin, more than $2,000.00 in cash, a calculator, and a notebook. The police also found in the bedroom from which the pocketbook was taken 117 plastic bags of heroin and a tissue box containing more than $1,204.00 in cash. Finally, the police confiscated a gym bag containing 300 packets of heroin. The defendant stated that all of the heroin belonged to her except for the 300 packets found in the gym bag, which she claimed belonged to an individual named "Ramon." The defendant further stated that she was to sell the 300 packets of heroin for "Ramon" and that she expected to receive something in return for doing so. The defendant admitted that she received the money in the tissue box from the sale of heroin. A police officer testified that the confiscated notebook contained several references detailing the sale of heroin by the defendant. Entered in evidence as part of the Commonwealth's case were two certificates of chemical analysis performed by the Department of Public Health (G. L. c. 111, § 13) which reported that the plastic bags, 1095 in total, confiscated in the search contained a total of 88.02 grams of heroin.

1. *The jury instructions.* To support a conviction of trafficking in heroin, the Commonwealth must prove, among other things, that the defendant possessed at least twenty-eight grams of heroin. See G. L. c. 94C, § 32E(c). While explaining to the jury the significance of the analysis certificates in relation to the proof that the packets contained heroin, the judge instructed the jury that those documents should be considered "prima facie evidence," which she defined as evidence carrying a "presumption" in its favor which must be followed "unless there is any evidence to the contrary to rebut that presumption." By requiring the defendant to produce evidence in order to rebut the presumption of the analysis sheets, the trial judge

seemed to place the burden of production on the defendant as to an element of the offense charged.

It has been stated repeatedly that "[a] presumption which shifts to the defendant the burden of *persuasion* on an element of the Commonwealth's case is constitutionally impermissible [emphasis added]. *Mullaney* v. *Wilbur*, 421 U.S. 684, 703-704 (1975). *Sandstrom* v. *Montana*, 442 U.S. 510, 524 (1979). *Commonwealth* v. *Moreira*, 385 Mass. 792, 794-796 (1982)." *Commonwealth* v. *Crawford*, 18 Mass. App. Ct. 911, 912 (1984). The question whether a shift of the burden of *production* similarly offends due process has specifically been left open. See *Sandstrom* v. *Montana*, 442 U.S. at 519 n.8; *Francis* v. *Franklin*, 471 U.S. 307, 314 n.3 (1985). See also *Commonwealth* v. *Moreira*, 385 Mass. at 795-796. The logic of the *Sandstrom* and *Moreira* lines of cases has at least some bearing on the constitutional validity of the jury instructions in the instant case which shifted the burden of production. The jury were not told that they could infer from the chemical certificates that the plastic bags contained heroin. Instead, they were told that they must infer the presence of heroin in the specified quantity unless the defendant produced some contrary evidence. Instructions which, through the use of a presumption, require a defendant to produce evidence in support of his innocence may tend to undermine the constitutional requirement that the Commonwealth must prove every element of a crime beyond a reasonable doubt.[1] For reasons which we proceed to explain, we need not decide whether the instructions given were constitutionally valid. In any event, the preferred course would have been to avoid the use of the word "presumption" and to instruct the jury on the permissive nature of any inference to be drawn from the certificates. See *Commonwealth* v.

---

[1] We understand the importance of a provision such as G. L. c. 111, § 13. Recognizing that most chemical analyses performed by staff of the Department of Public Health are routine and accurate, the Legislature sought by enactment of the statute to reduce court delays and the inconvenience of having busy public servants called as witnesses. See generally *Commonwealth* v. *Slavski*, 245 Mass. 405, 417-418 (1923); *Commonwealth* v. *Harvard*, 356 Mass. 452, 461-463 (1969).

*Pauley*, 368 Mass. 286, 292-295 (1975); *Commonwealth* v. *Moreira*, 385 Mass. at 797. Defense counsel failed to object to the instruction. In the circumstances, any error was harmless beyond a reasonable doubt. *Rose* v. *Clark*, 478 U.S. 570, 580-582 (1986). See *Commonwealth* v. *Garcia*, 379 Mass. 422, 441-442 (1980); *Commonwealth* v. *Gonzales*, 18 Mass. App. Ct. 979, 980 (1984). Compare *Commonwealth* v. *Crawford*, 18 Mass. App. Ct. at 912. Cf. *Commonwealth* v. *White*, 392 Mass. 282, 286-287 (1984). The defendant admitted to possessing and selling heroin, and defense counsel did not contest that the confiscated packets contained heroin. Nor was possession of the amount required to be convicted of trafficking contested. It is true that the defendant stated to the police officers that "Ramon" actually owned 300 of the 1095 packets of heroin seized in the apartment, and that defense counsel, seeking to have the jury convict the defendant of the lesser included offense of possession with the intent to distribute heroin, referred to that testimony in his closing argument. "Possession," however, does not turn on ownership. By stating her intention and authority to distribute all of the heroin, including Ramon's 300 packets, the defendant effectively admitted that she was in possession of all of it. Apart from a vigorous cross-examination of the Commonwealth's witnesses, the defense was an appeal to the conscience of the jury. See *Commonwealth* v. *Hebert*, 379 Mass. 752, 755-756 (1980). Counsel stressed the defendant's cooperation during the search, her honesty and forthrightness in answering questions concerning the heroin put to her by the police officers, and her admirable motive for seeking the proceeds of the heroin sales: to purchase a gravestone for her recently deceased father. In these circumstances, where the evidence of guilt was overwhelming and the defense relied primarily on an appeal to sympathy, the chance that any error in the charge would have affected the result is remote.

2. *Ineffective assistance of counsel.* The defendant concedes that, based on the evidence, trial counsel made a reasonable tactical decision to seek, on grounds of sympathy, a verdict of the lesser included offense of possession with intent to dis-

tribute. See *Commonwealth* v. *Callahan*, 401 Mass. 627, 636 n.13 (1988); *Commonwealth* v. *Stoute*, 10 Mass. App. Ct. 932, 932-933 (1980). The more serious crime of trafficking in heroin carries a mandatory minimum sentence of five years' imprisonment. The defendant contends that she was deprived of that defense by her trial counsel's apparent misstatement at the end of his closing argument "that there is *at least* sufficient evidence to find her guilty of possession with intent to distribute" (emphasis supplied).[2] He probably intended to say "at most." The attorney's unfortunate phraseology might have had a tendency to undercut his over-all objective were it not for the otherwise consistent and forceful thrust of his closing argument. He repeatedly urged the jury to render a verdict on the lesser offense, emphasizing the defendant's openness and cooperative attitude with the police and statements that she was only selling heroin in order to be able to buy a gravestone for her deceased father. Given the evidence, those were the only points he could reasonably have hoped to make with the jury. His one misstatement, although not altogether insignificant, did not rise to the level of "serious incompetency, inefficiency, or inattention of counsel" which must be reached for a conviction to be overturned. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

*Judgment affirmed.*

---

[2] Placing the quoted sentence in fuller context, it is not altogether clear that the jury understood the language, as the defendant suggests, as a concession that the evidence warranted a finding of trafficking. Counsel's remarks were as follows:

"So, ladies and gentlemen of the jury, I would like to be able to argue little facts and say consider this and draw this inference and draw that inference, but I will not for one minute take away from the honesty of Mrs. Claudio. When the police asked her, "Did you do something wrong and do you have something wrong?" she said, "Yes." So ladies and gentlemen of the jury, the decision is up to you as to what it was that she did wrong, and she admits that she possessed them with the intent. Well, she didn't even admit with the intent, but I think that what with evidence [that] is here that there is at least sufficient evidence to find her guilty of possession with intent to distribute."