COMMONWEALTH vs. GLORIA CLAUDIO.

Bristol.   May 1, 1989. — August 3, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Controlled Substances. Practice, Criminal*, Instructions to jury, Presumptions and burden of proof, Objections to jury instructions, Failure to object. *Due Process of Law*, Presumption, Burden of proof, Inference.

At the trial of an indictment for trafficking in heroin, the judge's instruction to the jury with respect to chemical analysis certificates placed in evidence by the Commonwealth could reasonably have been understood by the jury as requiring their acceptance as true the statements in the certificates of the nature and amount of the substance analyzed, or their acceptance of the analysis as true unless the defendant proved otherwise, and the instruction was therefore unconstitutional under the principles enunciated in *Sandstrom* v. *Montana*, 442 U.S. 510, 524 (1979). [484-485]

At the trial of an indictment for trafficking in heroin the judge's erroneous but unobjected-to instruction, which the jury could reasonably have interpreted as establishing a mandatory presumption with respect to the truth of the chemical analysis certificates placed in evidence by the Commonwealth, did not require a new trial where there was no substantial risk that a properly instructed jury, considering the evidence presented at trial, would have rejected the information in the certificates as to the nature and amount of the substance seized. [485-487]

INDICTMENT found and returned in the Superior Court Department on February 11, 1986.

The case was tried before *Elizabeth J. Dolan*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. After a jury trial, the defendant was convicted of trafficking in heroin by knowingly or intentionally posses-

sing with intent to manufacture, distribute, or dispense twenty-eight grams or more, but less than one hundred grams, of that substance. G. L. c. 94C, § 32E (c) (1) (1988 ed.). The Appeals Court affirmed the conviction. 26 Mass. App. Ct. 218 (1988). At the trial, the Commonwealth had introduced in evidence two certificates of chemical analysis performed by the Department of Public Health which reported that 1,095 plastic bags seized from the defendant's apartment contained 88.02 grams of heroin. In the Appeals Court, the defendant challenged the judge's jury instruction concerning the significance of the certificates. She also asserted that she did not receive effective assistance of counsel. After the Appeals Court rejected her argument, the defendant sought, and we granted, further appellate review solely with respect to the jury instruction question. We, too, affirm the conviction, although our reasoning departs to some degree from that of the Appeals Court.

The judge instructed the jury that "the burden of proof is upon the Commonwealth to prove beyond a reasonable doubt and to a moral certainty that the defendant is guilty of the crime with which she has been charged," and that "[t]here is no duty resting upon the defendant to prove or to establish her innocence. . . . The defendant is not required to put any evidence on or to do anything. The burden remains solely with the Commonwealth to prove its case beyond a reasonable doubt." However, the judge also charged the jury as follows: "The Commonwealth must prove beyond a reasonable doubt that the defendant trafficked in what? In heroin. So, they must prove that the drugs that you have and will have in the jury deliberation room as evidence are heroin or any mixture thereof. You will have with you analysis sheets. They're marked. They're exhibits. These constitute an analysis done, I believe by the Federal Drug Administration, but it'll tell you on the analysis sheet, and the weight. Those analysis sheets constitute as a matter of law what we call, 'prima facie evidence,' again a legal term. It simply means that there is a presumption that goes with those analysis sheets. The presumption is what it says on the analysis sheet, that it is heroin and in the weight produced. You must accept that presumption unless there is

any evidence to the contrary to rebut that presumption. That's what prima facie evidence means. It carries with it a presumption that stands unless there is evidence to rebut that presumption. So, you have with you the analysis sheets and they constitute prima facie evidence, carrying the presumption that the drugs are heroin, and in the weight specified within those sheets."

Following her instruction concerning the certificates of analysis, the judge instructed that "the Commonwealth, in order to prove beyond a reasonable doubt the charge of trafficking, must prove that the net weight of the drugs fell within a category . . . the category being a net weight of more than twenty-eight grams and less than 100 grams." Also, she stated, "if you find that the Commonwealth has not sustained its burden beyond a reasonable doubt . . . as to the weight of the grams falling into the category that I told you, then you may consider whether or not the defendant is guilty of the lesser included offense [simple possession]."

The Appeals Court reasoned that, "[b]y requiring the defendant to produce evidence in order to rebut the presumption of the analysis sheets, the trial judge seemed to place the burden of production on the defendant as to an element of the offense charged. . . . Instructions which, through the use of a presumption, require a defendant to produce evidence in support of his innocence may tend to undermine the constitutional requirement that the Commonwealth must prove every element of a crime beyond a reasonable doubt." 26 Mass. App. Ct. at 219-220. The Appeals Court did not decide whether the instructions were constitutionally valid. Instead, recognizing that defense counsel had failed to object to the instruction, the court considered whether, even if the instruction was erroneous, it nevertheless was harmless beyond a reasonable doubt. *Id.* at 221. Reasoning that, at trial, the defendant had "admitted to possessing and selling heroin, and [that] defense counsel did not contest that the confiscated packets contained heroin," the Appeals Court concluded that any error in the instructions was harmless beyond a reasonable doubt and therefore was not reversible. *Id.*

In our view, a reasonable juror could have understood the jury instructions to mean either that the burden was on the defendant to prove that the bags did not contain 88.02 grams of heroin or that the certificates conclusively established that the bags did contain that amount. The instructions, therefore, were not correct. Since the defendant did not object at trial to the instructions, the question on review is whether the error created a substantial risk of a miscarriage of justice. Judging according to that standard, we conclude that the error does not require that the conviction be reversed. We explain below.

To determine the correctness of a jury instruction, it is appropriate first to consider how a reasonable juror could have understood it. *Sandstrom* v. *Montana*, 442 U.S. 510, 514, 524 (1979). *Commonwealth* v. *Pickles*, 393 Mass. 775, 778 (1985). *Commonwealth* v. *Moreira*, 385 Mass. 792, 794 (1982). The judge told the jury that they must accept the presumption that the substance was heroin and its weight was as recorded in the certificates of analysis unless there was evidence to the contrary; that the presumption "stands unless there is evidence to rebut that presumption." "So," the judge said, "you have with you the analysis sheets and they constitute prima facie evidence, carrying the presumption that the drugs are heroin, and in the weight specified within the sheets." A reasonable juror could have interpreted the words, "[y]ou must accept that presumption unless there is any evidence to the contrary to rebut that presumption," as shifting the burden of proof to the defendant, that is, as requiring the jury to accept the accuracy of the certificates unless persuaded otherwise by the defendant. See *Sandstrom* v. *Montana, supra* at 517; *Mullaney* v. *Wilbur*, 421 U.S. 684, 686 (1975); *Commonwealth* v. *Callahan*, 380 Mass. 821, 824-825 (1980). We have referred to this burden-shifting principle as a "mandatory presumption." *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 252 (1980).

We think that it also would have been reasonable for a juror to interpret the judge's statement that the "analysis sheets . . . constitute prima facie evidence, carrying the presumption that the drugs are heroin, and in the weight specified within the sheets," as implying that there was no rebuttal evidence in this

case and therefore the presumption "stands." Understood that way, the instruction was a direction to the jury to find that the nature and amount of the substance were as charged. See *Sandstrom* v. *Montana, supra* at 517; *United States* v. *United States Gypsum Co.*, 438 U.S. 422, 435 (1978); *Morissette* v. *United States*, 342 U.S. 246, 274-275 (1952).

We recognize that, both before and after the judge instructed the jury about the certificates of analysis, she told them that the Commonwealth had the burden of proving its case, including that the heroin weighed at least twenty-eight grams, and that the defendant was not required to put on any evidence "or to do anything." There is no necessary inconsistency, however, between those general instructions and the challenged instructions. Furthermore, even if there was inconsistency, the inconsistency was not explained. The jury reasonably could have concluded that the Commonwealth's burden of proof as a matter of law was sustained by its placement in evidence of the certificates of analysis. See *Sandstrom, supra* at 518-519 n.7; *Commonwealth* v. *Repoza*, 400 Mass. 516, 518 n.2, 519, cert. denied, 484 U.S. 935 (1987).

Because the jury reasonably could have understood that they were not simply permitted to infer from the certificates the facts reported therein, see *Commonwealth* v. *Pauley*, 368 Mass. 286, 291-292, appeal dismissed, 423 U.S. 887 (1975), but rather were required either to accept such information as true or to accept it as true unless the defendant proved otherwise, and because either of the latter two interpretations would have deprived the defendant of her right to due process of law, the instruction was unconstitutional. *Sandstrom, supra* at 524. *De-Joinville* v. *Commonwealth, supra*.

That conclusion requires us to consider whether the error necessitates reversal of the conviction. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979). Rule 24 (b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 895 (1979), provides that

"[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection." Nevertheless, we have recognized that an error that has not been called to the judge's attention may be so serious that we ought to exercise our "rarely used power" to set aside the verdict in order to prevent a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). "The test is whether there is a substantial risk of a miscarriage of justice." *Id.* at 564.

Whether such a risk exists in this case depends on the evidence, which the Appeals Court fairly summarized as follows: "On January 17, 1986, New Bedford police, authorized by a warrant, executed a search of an apartment occupied by the defendant. After having been read her 'Miranda rights' in Spanish, the defendant was asked if there were any drugs in the apartment, and she answered affirmatively. She handed to a police officer a pocketbook containing, among other things, 678 plastic bags containing heroin, more than $2,000.00 in cash, a calculator, and a notebook. The police also found in the bedroom from which the pocketbook was taken 117 plastic bags of heroin and a tissue box containing more than $1,204.00 in cash. Finally, the police confiscated a gym bag containing 300 packets of heroin. The defendant stated that all of the heroin belonged to her except for the 300 packets found in the gym bag, which she claimed belonged to an individual named 'Ramon.' The defendant further stated that she was to sell the 300 packets of heroin for 'Ramon' and that she expected to receive something in return for doing so. The defendant admitted that she received the money in the tissue box from the sale of heroin. A police officer testified that the confiscated notebook contained several references detailing the sale of heroin by the defendant. Entered in evidence as part of the Commonwealth's case were two certificates of chemical analysis performed by the Department of Public Health (G. L. c. 111, § 13) which reported that the plastic bags, 1095 in total, confiscated in the search contained a total of 88.02 grams of heroin." 26 Mass. App. Ct. at 219.

The erroneous instruction had no bearing on the question whether the defendant had made the admissions testified to by the police, and there was no evidence casting doubt on that testimony. Therefore, there is no reason to conclude that the jury did not credit that testimony and infer from it that the defendant had been in possession of all the heroin seized by the police and that she intended to distribute it. It makes no difference that some of the heroin may have belonged to "Ramon." Furthermore, although the defendant made no concessions with respect to the amount of heroin that had been seized, there was no affirmative evidence that its weight was other than the 88.02 grams reported in the certificates of analysis, and defense counsel's vigorous cross-examination of the Commonwealth's witnesses produced little, if anything, to suggest that the information contained in the certificates of analysis was inaccurate. Nothing in the evidence sheds serious doubt on the chain of custody of the substance seized. We conclude, therefore, that there is not a substantial risk that a properly instructed jury would have rejected the certificates' information as to the weight of the heroin seized.

*Judgment of the Superior Court affirmed.*