[No. 23128-0-II.  Division Two.  August 18, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. LISA MARIE NEAL, *Appellant*.

*R.A. Lewis* (of *Knapp, O'Dell & Lewis*), for appellant (appointed counsel for appeal).

*Bradley W. Andersen, Prosecuting Attorney*, for respondent.

Hunt, A.C.J. — Lisa M. Neal appeals her conviction for possession of a controlled substance, arguing that (1) she was illegally arrested, (2) the seized methamphetamine should have been suppressed, and (3) a certified Washington State Patrol Crime Lab Report should not have been admitted into evidence in lieu of the forensic scientist's live testimony. Holding that the arrest and seizure were lawful and that the trial court did not abuse its discretion in admitting the lab report, we affirm.

## FACTS

### (Relevant to State Crime Lab Report)

On October 28, 1997, the State filed a CrR 6.13(b)(3) notice of intent to use a certified copy of the Washington State Patrol Crime Laboratory report, as evidence of the analytical findings of the substance seized (from Neal's purse), in lieu of the personal appearance of the forensic scientist.[1] On February 3, 1998, Neal served the State with a written objection to use of the report and a demand that the expert witness be produced at trial. One day later, she filed her objection and demand with the court.

Neal argued that the State's certificate was defective because it did not contain "the name of the person from whom the substance or object was received," as required by CrR 6.13(b)(1). Rather, the certificate stated that the forensic scientist received the substance from the "The Tacoma Crime Laboratory Evidence Vault." The trial court denied

---

[1] If the State gives the Defendant proper notice, "the official written report of an expert witness which contains the results of any test of a substance or object which are relevant to an issue in a trial shall be admitted in evidence without further proof or foundation as prima facie evidence of the facts stated in the report if the report" meets certain criteria, including, "bear[ing] . . . the name of the person from whom the substance or object was received." CrR 6.13(b)(1).

Neal's demand for production at trial of the forensic scientist, explaining:

> The purpose of the rule is so that the person receiving the test certification can go back and check to see whether there was a chain of custody of evidence. I . . . don't think it really is a problem because here the Defense has had an opportunity to go back since October to the Tacoma Crime Lab Evidence Vault and ask whether or not did you send this to the Crime Lab and check it out.
>
> So, I don't think the fact that the Crime Lab, it's no more of a person, I guess it's like a corporation who's also — can stand in for a person. So I don't believe that's a defect in the Crime Lab report.
>
> Defense has had this since October and had plenty of opportunity to challenge this and make a request for the expert, that's not disputed, that the request was not timely made.[2]
>
> . . . .
>
> Because of the length of time involved, I'm going to deny the motion to require the expert to be here. The Defense has had plenty of time to challenge the results of this test since October. If they wished to have their own expert evaluate this substance, they had plenty of time to do so.

## ANALYSIS

Neal argues that the trial court erred in admitting the certified crime lab report, which included the lab test results that methamphetamine was the substance contained in the Ziploc plastic bag found in her purse. "CrR 6.13 is a procedural rule establishing a 'documentary' exception to the hearsay rule. The rule provides a method by which a lab report can be self-authenticated by the author." *State v. Sosa*, 59 Wn. App. 678, 682, 800 P.2d 839

---

[2] A demand to produce the expert witness at trial must be served upon the prosecutor "at least 7 days prior to the trial date or, upon a showing of cause, such lesser time as the court deems proper." CrR 6.13(b)(3)(iii). Here, Neal's demand was served only six days before the scheduled trial date, and it was not until the first day of trial that Neal sought to establish cause for the tardy service.

(1990). *Sosa*, however, does not discuss issues of timeliness, nor does it hold that the rule provides the exclusive method by which a lab report can be authenticated.

CrR 6.13, subsection (b)(1), provides:

the official written report of an expert witness which contains the results of any test of a substance or object which are relevant to an issue in a trial shall be admitted in evidence without further proof or foundation as prima facie evidence of the facts stated in the report *if the report bears or has attached a certification stating* that the certifier has performed a test on the substance or object in question, *the name of the person from whom the substance or object was received,* the certificate is attached to a true and complete copy of the certifier's official report, the report was made by the certifier, and the qualifications of the certifier to make such tests. The certificate shall be signed by the certifier with the title of his office and his business address and telephone number.

(Emphasis added.)

### I. Untimeliness of Neal's Demand for the Forensic Scientist

■ The trial court *must* exclude such a report, in favor of the expert's live testimony, if

at least 7 days prior to the trial date or, upon a showing of cause, such lesser time as the court deems proper, the defendant has served a written demand upon the prosecutor to produce the expert witness at the trial.

CrR 6.13(b)(3)(iii).

Here, Neal did not serve a timely demand at least seven days before trial; nor did the trial court deem her six-day notice proper. In October 1997, the State served Neal with its notice of intent to use a certified copy of the forensic scientist's report. Neal made no objection or demand concerning this notice for over two months. Not until February 3, 1998, six days before trial, did Neal serve on the prosecutor her demand that the forensic scientist appear to testify in person. Because Neal's demand was one day late,

CrR 6.13(b) did not operate to *require* production of the live expert witness in lieu of the certified report.

Moreover, even though the rule provides that a trial court *may* allow the demand to be served in a shorter time "upon a showing of cause," Neal's demand did not fall within this exception. CrR 6.13(b)(3)(iii). Rather, on the first day of trial, she asked the court to excuse her untimeliness and to require the forensic scientist to testify;[3] but she did not establish "cause." Nor can Neal demonstrate prejudice from the forensic scientist's certification that the scientist received the Ziploc bag substance from "[t]he Tacoma Crime Laboratory Evidence Vault," rather than from a named individual. As the trial court noted, "Defense has had this since October and had plenty of opportunity to challenge this and make a request for the expert." The trial court did not abuse its discretion in refusing to shorten the seven-day period prescribed by the rule and refusing to consider Neal's untimely request.

II. Report and Certificate In Lieu of Expert Testimony

A. Mandatory

CrR 6.13(b) allows a written crime lab report and accompanying certificate to be used as prima facie evidence of the test results and the chain of evidence custody to and from the testing expert. For similar cost and time-saving reasons

---

[3] Neal's attorney stated by affidavit that on January 29, 1998, the prosecutor advised him "that the Neal matter was in a secondary position to at least three other trials, and that it would definitely not proceed to trial on February 9, 1998." Thus, Neal's attorney reasoned, the written demand "is given more than seven days prior to the date both parties actually anticipate the trial will occur." Regardless of Neal's attorney's reasoning, had the trial court acceded to the request, it most likely would have had to continue the trial in order to allow the state time to summon and to transport the witness the substantial distance from Tacoma to Carson. The detriments flowing from this course of action are many and obvious: impediment to Neal's right to a speedy trial; inconvenience to other witnesses and parties to the trial already assembled; cost of transporting the witness as well as rescheduling the trial; and loss of valuable court time that otherwise could be utilized by other litigants. In contrast, the benefits, if any, are not identified.

other states allow admission of a certified lab report in lieu of the forensic scientist's live testimony.[4]

■ Neal contends the drug analysis report was inadmissible because the certification, recited at the bottom of the report, does not state "the *name* of the person from whom the substance . . . was received." CrR 6.13(b)(1) (emphasis added). Neither party has cited authority on the sufficiency of a report with a certificate bearing the name of the crime lab, rather than the name of a human being, from whom the tester received the evidence. But the 1976 amendments to the rule clearly establish that an identified crime lab vault is not an acknowledged substitute for "the name of the person" on the certificate. As initially promulgated, CrR 6.13(b) read:

> (1) Subject to subsection (b)(2) of this rule, the official written report of an expert witness which contains the results of any test of a substance or object which are relevant to an issue in a trial shall be admitted in evidence without further proof or foundation as prima facie evidence of the facts stated in the report if the report bears the following certification:
>
> The undersigned certifies under oath that:
>
> 1. He performed a test on the (substance) (object) in question,
>
> 2. *He received the (substance) (object) in question from* _____,
>
> 3. The document on which this certificate appears or to which it is attached is a true and complete copy of an official report of the _____, and

---

[4] *E.g.*, ALA. CODE § 12-21-300; KAN. STAT. ANN. § 22-3437; MASS. GEN. LAWS ANN. ch. 111, § 13 (West); N.H. REV. STAT. ANN. § 318-B:26-a; N.J. STAT. ANN. § 2C:35-19 (West). "[T]he underlying rationale for [N.H. REV. STAT. ANN. § 318-B:26-a] is to lessen the cost and deployment of personnel in furnishing technical evidence of the composition, quality or quantity of the contraband associated with prosecution of the drug laws of the State." *State v. Christensen*, 135 N.H. 583, 607 A.2d 952, 954 (N.H. 1992). The purpose of MASS. GEN. LAWS ANN. ch. 111, § 13, is "to simplify proof of chemical analyses performed routinely and accurately by a public agency and 'to reduce court delays and the inconvenience of having busy public servants called as witnesses.'" *Commonwealth v. Johnson*, 32 Mass. App. Ct. 355, 589 N.E.2d 328, 330 (1992) (quoting *Commonwealth v. Claudio*, 26 Mass. App. Ct. 218, 220 n.1, 525 N.E.2d 449, 451 (1988), *aff'd*, 405 Mass. 481, 541 N.E.2d 993 (1989)).

    4. Such document is a report of the results of a test which report and test were made by the undersigned who has the following qualifications and experience: _____.

Former CrR 6.13(b) (1975) (emphasis added), *reprinted in* 84 Wn.2d 1101-02. Item 2 above was silent as to whether the tester could receive the evidence from a person or some other entity.

In January 1976, the Supreme Court amended the certification exemplar, requiring that the name of a "person" fill the blank in the previous version of item 2 above: "2. *The person from whom he received the (substance) (object) in question is:_____.*" Former CrR 6.13(b) (Jan. 1976) (emphasis added), *reprinted in* 85 Wn.2d 1107. In its order amending the rule, the Supreme Court explained that "a person rather than an agency must appear in paragraph 2 of the certification of the report." In the Matter of Amending Criminal Rule for Superior Court (CrR 6.13) and Criminal Rule for Justice Court (JCrR 4.09), No. 25700-A-204 (Aug. 26, 1975).

The July 1976 amendments to CrR 6.13(b) put the rule in its current form, maintaining "person" in the certification exemplar and adding a preceding subsection that requires the certification to contain "the name of *the person* from whom the substance or object was received."[5] In the Matter of the Amendment of Superior Court Criminal Rule 6.13(b) (CrR 6.13(b)) and Justice Court Criminal Rule 4.09(c) (JCrR 4.09(c)), No. 25700-A-225 (June 4, 1976) (emphasis added); *see also* 87 Wn.2d 1107-08.

Thus, in order for the report to qualify for mandatory admission under CrR 6.13(b), the certificate must name "the *person*," not merely an entity, from whom the evidence was received for testing.[6] Here, the name of the crime lab does not meet this requirement. Because the certificate did

---

[5] Similarly, Alabama requires, inter alia, "[t]he name of the person making the delivery [to the lab], and the name of the person receiving the delivery [at the lab]." ALA. CODE § 12-21-300(b).

[6] The State points out that subsection CrR 6.13(b)(2) provides:

not contain the required name of a *person* from whom the forensic scientist received the evidence to be tested, CrR 6.13(b) did not *mandate* that the trial court admit the certified report.

## B. DISCRETIONARY

■ Nevertheless, lack of the requisite certification does not automatically preclude admission of the report. Rather, absent a timely defense objection seeking production of the live witness, the report's admissibility was within the trial court's discretion, which we review for abuse. *See* ER 103(a); *State v. Bourgeois*, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997) ("The decision to admit evidence lies within the sound discretion of the trial court and should not be overturned on appeal absent a manifest abuse of discretion."); *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997) (an abuse of discretion exists "[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons").

Here, the trial court, in essence, found that the report substantially complied with CrR 6.13(b)(1), ruling that the crime lab was "like a person" or corporation, which can "stand in for a person." Moreover, Neal did not object to the substance of the report or its foundation; rather, her objection focused solely on the lack of a named person from

---

The certificate shall be in *substantially* the following form:

The undersigned certifies under penalty of perjury that:

1. He performed a test on the (substance) (object) in question;

2. *The person from whom he received the (substance) (object) in question is _____;*

3. The document on which this certificate appears or to which it is attached is a true and complete copy of my official report; and

4. Such document is a report of the results of a test which report and test were made by the undersigned who has the following qualifications and experience[.]

(Emphasis added.) Although the rule contemplates substantial compliance with the *form* of the certificate, the rule requires strict compliance with the *content* of the certificate, at least in regard to the name of the person providing the substance or object in question to the tester.

whom the forensic scientist received the evidence for testing.

ER 103(a) provides:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection*. In case the ruling is one admitting evidence, a timely objection or motion to strike is made, stating the specific ground of objection . . . ; or

(2) *Offer of Proof*. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Here, no substantial right of Neal's was affected; nor does the record suggest that admission of the report in lieu of live testimony in any way prejudiced Neal. We have already held that Neal's objection to the report was not timely. Moreover, Neal made no offer of proof as to how the expert's live testimony would have differed materially from the information recited in the report. Nor did she allege that the chain of evidence had been corrupted or that the testing was improperly conducted. Rather, the certificate named a secure entity from which the forensic scientist received the evidence for testing—the Tacoma Crime Lab Vault. Thus, we hold that the certification substantially complied with CrR 6.13(b) and that the trial court did not abuse its discretion in admitting the report.[7]

Affirmed.

VAN DEREN, J. Pro Tem., concurs.

SEINFELD, J., concurs in the result.
Review granted at 142 Wn.2d 1016 (2001).

---

[7] *See State v. Rupe*, 101 Wn.2d 664, 685, 683 P.2d 571 (1984) (omission of starting time from taped recording of defendant's statements did not render the tape inadmissible because the taping substantially complied with the governing statute (RCW 9.73.090), provided the necessary safeguards intended by the statute, and the defect was not alleged to be of critical importance).