40 So.3d 1220 (2010)
STATE of Louisiana in the Interest of L.W.
No. 2009 KJ 1898.
Court of Appeal of Louisiana, First Circuit.
June 11, 2010.
*1221 Waiter P. Reed, Kathryn Landry, James D. "Buddy" Caldwell, Meridith J. Trahant, *1222 Baton Rouge, LA, Patrick Berrigan, Slidell, LA, for Appellee, State of Louisiana.
Katherine M. Franks, Abita Springs, LA, for Defendant/Appellant, L.W.
Before WHIPPLE, HUGHES and WELCH, JJ.
WHIPPLE, J.
L.W., a juvenile, was alleged to be a delinquent child by a petition filed on February 17, 2009, pursuant to the Children's Code. The petition alleged that the juvenile committed the felony-grade delinquent act of aggravated rape, a violation of LSA-R.S. 14:42. He denied the allegation and, following an adjudication proceeding, was adjudicated a delinquent child as alleged in the petition. At the disposition hearing, the court committed L.W. to the custody of the Department of Public Safety and Corrections, Office of Youth Development, until his 18th birthday, with credit for time served, without a recommendation as to secure or non-secure custody, and with the benefit of parole.
He now appeals, designating the following assignments of error:
1. The evidence was insufficient to meet Due Process standards.
2. L.W. was denied his Sixth Amendment right to confront his accusers when the prosecution, without notice to the defense, introduced the child-accuser's testimony only by testimonial hearsay which included a video of a forensic interview conducted at the request of the police. The prosecutor's actions deprived L.W. of his constitutional right to contemporaneously confront his accuser and placed the defense in a Morton's Fork, compelling a choice between risking the displeasure of the trial court in calling the witness for cross-examination or forfeiting a constitutional right.
3. The Louisiana statutory scheme, [Children's Code Articles] 325-327, regarding the use of testimonial hearsay in the form of video interviews without the right to contemporaneous cross[-]examination by the defense prior to the introduction of the exhibit violates the Confrontation Clause of the Sixth Amendment to the United States Constitution and Art. 1, Section 16 of the Louisiana Constitution.
4. The legislative designation of an unsworn forensic video of a non-adult complaining witness as an "exception" to the hearsay rule so as to be offered for the "truth" of the statement without the corresponding right to contemporaneous cross[-]examination of the accuser violates the confrontation clause of the Sixth Amendment as explained by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and followed by Melendez-Diaz v. Massachusetts, ___ U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 [ (2009) ].
Finding no merit in the assigned errors, we affirm the adjudication of delinquency and the disposition.

FACTS
The victim, M.R., was six years old when her parents began sponsoring a youth discipleship group that met on Wednesday nights at their house. M.R.'s mother, Theresa, described it as an outreach program where they would teach the Bible to different kids, including thirteen-year-old L.W., who was a neighbor. After some concerns about L.W.'s behavior during the meetings, Theresa went to L.W.'s home to talk to him and his parents and to explain that L.W. would not be allowed to continue participating in the meetings. Theresa explained that L.W. acted inappropriately toward the girls in the group. Theresa testified that during that conversation, L.W. *1223 admitted "coming on verbally to about five girls from the youth group." She further testified that L.W. began crying, and said he had a secret that was too bad to confess and "would have to be just between him and God."
L.W.'s parents stated that L.W. had been dismissed from multiple groups and was having trouble at school because of sexual harassment. Theresa testified that L.W.'s stepfather told her, "I feel right now that the Lord is telling me that he's done something to someone in your family, and that's why he won't confess it to you." Theresa stated they told her that L.W. went to a special school because of sexually inappropriate behavior, that he had to be walked from his classroom to the bathroom because he cannot keep his hands off the girls at school, that another next-door neighbor said that L.W. had been "messing" with their daughter, that they had to move from New Orleans because of a problem with L.W.'s sexual behavior, and that L.W.'s mother lost her in-home care job because of L.W.'s sexual behavior.
Theresa was concerned after this discussion, as L.W. was treated as one of the family, spent a lot of time at M.R.'s house, and was occasionally unsupervised around her children. Theresa decided to question M.R. about L.W. and his behavior around her.
M.R. told Theresa that L.W. would come into her room when Theresa was on the phone. She told Theresa that L.W. "had stuck his number one in her number one and that he had also stuck his number one into her number two." Based on these allegations, Theresa contacted the police, and Detective Jerry Rogers with the St. Tammany Parish Sheriffs Office set up interviews for M.R. with the Children's Hospital and the Child Advocacy Center's (CAC) forensic interviewer.
Upon concluding his investigation, Rogers arrested L.W. for aggravated rape. At the time of his arrest, L.W. indicated that he thought he was being arrested for something to do with a cell phone or for something related to M.R. Later, L.W. denied having committed sexual assault on M.R. and denied that he mentioned M.R. at the time of his arrest. He explained that he said he thought his arrest had something to do with "Me," a girl he had been seeing prior to the arrest.

SUFFICIENCY OF THE EVIDENCE
When the State charges a child[1] with a delinquent act[2], it has the burden of proving each element of the offense beyond a reasonable doubt. LSA-Ch.C. art. 883. On appeal, the applicable standard of review is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. This standard of review applies to juvenile proceedings in which a child is adjudicated a delinquent. However, in juvenile proceedings, the scope of review of this court extends to both law and facts. La. Const. art. V, § 10(B); State in the Interest of D.F., XXXX-XXXX, pp. 4-5 (La.App. 1st Cir.6/6/08), 991 So.2d 1082, 1084-85, writ *1224 denied, XXXX-XXXX (La.3/27/09), 5 So.3d 138. Essentially, while we review whether the evidence in support of the adjudication is sufficient, we must determine, viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could find from the evidence adduced, proof of guilt beyond a reasonable doubt. State in the Interest of Wilkerson, 542 So.2d 577, 581 (La.App. 1st Cir.1989). In Wilkerson, this Court stated:
In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review.
Wilkerson, 542 So.2d at 581.
The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in LSA-C.Cr.P. art. 821[3] is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. State in the Interest of D.F., XXXX-XXXX at p. 5, 991 So.2d at 1085. When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. State in the Interest of L.C., 96-2511, p. 3 (La. App. 1st Cir.6/20/97), 696 So.2d 668, 670. Once the crime itself has been established, a confession alone may be used to identify the accused as the perpetrator. State In The Interest of D.F., XXXX-XXXX at p. 6, 991 So.2d at 1085.
Louisiana Revised Statutes 14:42 provides, in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
...
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.
Aggravated rape is a general intent crime. State v. McDaniel, 515 So.2d 572, 575 (La. App. 1st Cir.1987), writ denied, 533 So.2d 10 (La.1988). General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10(2). The trier of fact is to determine the requisite intent in a criminal case. State v. Crawford, 619 So.2d 828, 831 (La.App. 1st Cir.), writ denied, 625 So.2d 1032 (La.1993).
At the hearing, the State presented: testimony from Dr. Yameika Head, a pediatrician at Children's Hospital in New Orleans and expert in forensic pediatrics, who examined M.R. in relation to the allegations that she was raped; Detective Rogers, who investigated the allegations; JoBeth Rickles, a forensic interviewer with the CAC, who conducted a videotaped interview *1225 of M.R. that was introduced into evidence; and M.R.'s mother, Theresa, to whom M.R. made the initial allegation.
Theresa testified that she and her husband went to L.W.'s home to speak to his parents about L.W.'s behavior at Bible meetings held at their home. Theresa explained that L.W. was making unwanted advances toward some of the girls in the group. Theresa testified that during that conversation, L.W. stated that he "had another secret to confess." She further testified that L.W. then began crying and said that the secret "was too bad" to confess and that "it would have to be just between him and God." Theresa said that L.W.'s parents explained that they had sexual problems with L.W. in the past. L.W.'s stepfather then told Theresa, "I feel right now that the Lord is telling me that he's done something to someone in your family, and that's why he won't confess it to you." Fearing that this was true, Theresa went home to talk to M.R., at which time M.R. made allegations of rape against L.W.
Detective Rogers testified that he investigated the allegations against L.W. When he spoke with Theresa, she told him that M.R. said L.W. "had stuck his number one in her number one and that he had also stuck his number one into her number two." Based upon this information, Rogers scheduled an interview for M.R. at the CAC, which interview was conducted by JoBeth Rickles. Rogers found M.R. to be consistent in her allegations and reliable as a witness. Therefore, he made the decision to arrest L.W. for aggravated rape. When Rogers placed L.W. under arrest, L.W. stated that he was not surprised and believed he was being arrested either for "the cell phone incident or an incident with [M.R.]."
L.W. argues that the court erred in rejecting his testimony and that of his mother in favor of M.R.'s testimony. The court provided its reasons for finding M.R. credible, stating that M.R. "consistently repeated the same version of what happened to her.... Specifically, [M.R.] stated that the defendant ... `stuck his number 1 in my number 1 and he stuck his number 1 in my number two.' The Court finds [M.R.] to be a bright and articulate little girl, and her story is both credible and compelling." M.R. gave details about where she and L.W. were when he raped her (e.g., in a bedroom, with her laying on the bed and L.W. standing; in the backyard, behind the fence), the general time of day when some of the incidents occurred (e.g., when it was starting to get dark) and where other members of her family were and what they were doing at the time (e.g., M.R.'s brother and L.W.'s brother were outside playing basketball, M.R.'s sister was inside, M.R.'s mother was home). M.R. stated that L.W. would pull his pants down and sometimes he would pull her pants down and sometimes she would pull them down. Adults who had contact with M.R. described her as a mature six-year-old who is very smart and intelligent.
The court further noted in its reasons for judgment that it found the testimony of Dr. Yameika Head compelling. Head's testimony, in addition to relating what M.R. told her, primarily explained that the absence of physical evidence of rape neither confirms nor denies abuse, as penetration can occur without resulting in physical trauma.
As for the evidence presented by L.W., the trial court stated that it found the evidence neither compelling nor credible, specifically finding L.W.'s mother to have contradicted her own testimony, first by denying that any sexually inappropriate behavior had been engaged in by L.W., then by acknowledging specific incidents. L.W.'s mother also contradicted L.W.'s *1226 own testimony, when she admitted that L.W. has had problems at school with acting out sexually, contrary to L.W.'s denial of any incidents of sexually inappropriate behavior.
L.W. argues that the evidence should be deemed insufficient because M.R. had no physical changes resulting from penetration, never described anything resembling ejaculation, and could not describe L.W.'s penis. However, the law provides that emission is not necessary and any sexual penetration, however slight, is sufficient to complete the crime. LSA-R.S. 14:41 B. In such a case, the lack of physical evidence does not preclude the commission of the crime.
Any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found proven beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, the essential elements of aggravated rape. Additionally, after undertaking our State's constitutionally mandated review of the law and the facts in a juvenile proceeding, we find no manifest error by the juvenile court in its adjudication of delinquency based on L.W.'s commission of aggravated rape.
This assignment of error is without merit.

CONFRONTATION CLAUSE
In three assignments of error, L.W. contends that his right to confrontation was violated essentially because M.R. did not testify during the State's case-in-chief. Rather, the State relied upon a videotaped interview with M.R. to support the allegations of the petition. However, the State did announce that M.R. was present and available for cross-examination and L.W.'s counsel did, in fact, subject her to his examination. Nevertheless, L.W. contends that his right to confrontation was not sufficiently protected.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. The confrontation clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. art. I, § 16. Confrontation rights mean more than the ability to confront witnesses physically. Their main purpose is to secure for the defendant the opportunity to cross-examine. State v. Lewis, 2005-170, pp. 12-13 (La.App. 5th Cir.11/29/05), 917 So.2d 583, 592, writ denied, XXXX-XXXX (La.12/15/06), 944 So.2d 1277. Cross-examination is the primary means by which to test the believability and truthfulness of testimony, and it provides an opportunity to impeach or discredit witnesses. State v. Lewis, 917 So.2d at 592.
When the tape of the forensic interview was initially offered into evidence with Rogers as the supporting witness, counsel for L.W. stated, "I think Your Honor has to take a few more steps before you can decide whether it's admissible or not. I think we have to determine competency of the witness, and we have to determine whether or not they've complied with the requirements before it can be admissible in the court." After more questioning, counsel again objected to the lack of a proper foundation. The State then called Rickles to lay the foundation for admission of the video. Counsel again objected that the proper foundation was not laid. The Court then asked counsel to articulate specific objections to the foundation, at which point counsel indicated that every voice on the recording had not been identified and also stated an objection as to "the competency of the [victim, M.R.,] to *1227 testify." The Court stated it would address the issue of competency after the tape played.
No contemporaneous objection was made at trial regarding a confrontation issue.[4] An irregularity or error cannot be complained of after the verdict unless it was objected to at the time of the occurrence. Accordingly, this argument was not properly preserved for appellate review. LSA-C.E. art. 103(A)(1); LSA-C.Cr.P. art. 841(A). See State v. Young, 99-1264, p. 9 (La.App. 1st Cir.3/31/00), 764 So.2d 998, 1005 (defendant is limited on appeal to the grounds for the objection that were articulated at trial).
Even assuming defense counsel's trial objections were broad enough to encompass a Crawford claim, we would find no Confrontation Clause violation. In State v. Kennedy, XXXX-XXXX (La.5/22/07), 957 So.2d 757, rev'd on other grounds, ___ U.S. ___, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), the Louisiana Supreme Court addressed the admission of a CAC interview tape under Crawford, The victim in that case, who was eight years of age at the time of the offense, testified at trial. While the child was on the stand, the State played for the jury her videotaped interview. The victim remained on the stand after the videotape was shown, and she underwent direct and cross-examination.
The defendant in Kennedy argued that the tape-recorded interview was testimonial hearsay under Crawford, and that its admission at trial was violative of his right of confrontation. The Kennedy court rejected the defendant's argument, finding no Confrontation Clause violation. Citing Crawford, the court reasoned that the Confrontation Clause places no constraints on the use of prior testimonial statements where the declarant is present at trial to defend and explain them. A testimonial videotaped statement is not, therefore, inadmissible if the declarant testifies and can be questioned regarding the statement. The Kennedy court further held that LSA-R.S. 15:440.5, which sets forth the requirements for admissibility of a videotaped interview, is not facially unconstitutional, as it specifically requires, as does LSA-Ch.C. art. 327, as a condition of admissibility that "[t]he protected person is available to testify." LSA-R.S. 15:440.5(A)(8); Kennedy, XXXX-XXXX at pp. 24-27, 957 So.2d at 775-77.
All parties to the taped interview, including M.R., were available for cross-examination. When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of prior testimonial statements. Crawford v. Washington, 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 1369 n. 9, 158 L.Ed.2d 177 (2004); State v. Feazell, 486 So.2d 327, 331 (La.App. 3d Cir.), writ denied, 491 So.2d 20 (La.1986) ("The State offered the videotape in evidence as the direct testimony of the child and, at the conclusion of the videotape, tendered the child in person for cross-examination by defendant.... Under these circumstances ... the defendant's constitutional right of confrontation was not violated since he was given an opportunity to cross-examine the witness against him."). Accordingly, under Crawford, because M.R. in fact underwent cross-examination, there was no Confrontation Clause violation, and, as such, L.W.'s right to confrontation was not violated. This issue is without merit.
Additionally, L.W. argues that, because the State in this case merely made *1228 M.R. available and did not call her as a witness in the State's case-in-chief, L.W. was put in the "Catch 22" of either calling M.R. to the stand at the risk of inflaming the judge or avoiding the judge's wrath at the cost of waiving his constitutional right to confront and cross-examine a key witness. L.W. relies on Lowery v. Collins, 988 F.2d 1364 (5th Cir.1993), to support this contention.
The Lowery court determined that placing a defendant in the untenable position of calling the child witness for cross-examination and risking inflaming the jury or, in the alternative, waiving his right to confrontation, was a choice that did not meet constitutional muster. Lowery v. Collins, 988 F.2d at 1369-71. However, in this case, the case against L.W. was presented before a judge, not a jury. When it became clear that the State would not call M.R. to testify, the following discussion occurred:
[Counsel]: Okay. Just a procedural question here. The State apparently is not going to call the victim.
[Court]: Obviously.
[Counsel]: Okay. Andand I would just like to make sure that the victim remains here, because I will call the victim. Okay?
[Court]: The victim is here.... All right. Call your first witness, please.
[Counsel]: Okay. Another procedural question, Judge. Um-I'm going to call the victim next. First witness.
[Court]: You're going to call the victim?
[Counsel]: I'm going to call the victim.. And I  I'd like to get some guidelines, I think, from the Court about how you would like to handlethis is a six-year-old girl.
[Court]: Right. And I understand that. And, [counsel], I've known you a long time, and  and I trust you to ask your questions in an appropriate fashion considering the age of this young girl. She's six years old. And considering the seriousness of the  the situation that we all find ourselves in.
And, unfortunately, we do not have the  the video conferencing to facilitate this matter. Now, what I would like to do is to, um  I mean, I'm going to trust you to be appropriate. And  and  and I've known you a long time, and I'll be very disappointed in you if you are not. And if you are not, I will be quick to take action against you that I deem appropriate.
I know you have to defend your client, but you also have to be considerate and compassionate and professional concerning this young child's age.
[Counsel]: I understand that in general, Judge.
[Court]: Pardon?
[Counsel]: One particular question that I have, Judge, is that I anticipate that this girlthis young girl, young lady, will not speak loud enough to where I will be able to understand her. And if I'm sitting over here and I can't understand her  ... Your Honor, ifif it please, I'm  I'm worried about the  the entire setting here as far as intimidation on this young lady.
Would it be possible to do it in your office or in your conference room? Will I mean, itit just  this is a very intimidating room.
At counsel's request, the proceeding was moved to a less intimidating environment, where L.W. called M.R. as his first witness and cross-examination ensued. There is no indication that the questions were tempered and, upon conclusion, counsel stated, "Okay. That's all the questions I have, Judge." Because L.W. did exercise his right to confrontation, did not object to the method or manner in which it was conducted, *1229 and did not indicate that his cross-examination was constrained in any way, we find this issue without merit.
Lastly, relying on the recent United States Supreme Court case of Melendez-Diaz v. Massachusetts, ___ U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), L.W. asks this Court to declare Articles 325 and 327 facially unconstitutional as depriving a defendant the right to contemporaneous cross-examination by not requiring the State to present the witness prior to the introduction of the video.[5]
In Melendez-Diaz, the Massachusetts Court of Appeals, in an unpublished opinion, approved evidence in the form of drug analysis certificates indicating that a substance found in the possession of the defendant was cocaine. Commonwealth v. Melendez-Diaz, 69 Mass.App.Ct. 1114, 870 N.E.2d 676, 2007 WL 2189152, at p. 4 n. 3 (2007) (approving drug analysis certificates and rejecting claim that they were "subject to the holding" in Crawford).
The Massachusetts court relied on an earlier opinion by the Massachusetts Supreme Court that held a drug analysis is not testimonial for the purposes of the standard in Crawford. See Commonwealth v. Verde, 444 Mass. 279, 827 N.E.2d 701, 706 (2005) (approving certificate prepared by University of Massachusetts Medical School reporting that substance seized from defendant was cocaine; public records are admissible despite objection under confrontation clause; such material has "little kinship to the type of hearsay the confrontation clause intended to exclude," and Crawford made exception for business and public records). Further, Massachusetts had a statute that allows a certified lab report to substitute for live testimony, albeit not a notice-and-demand statute.[6]
The United States Supreme Court held that documentary evidence stating that certain contraband tested positive for cocaine constituted "testimonial" evidence, and was inadmissible in the absence of the trial testimony of the analysts who performed such tests, pursuant to the Confrontation Clause of the Sixth Amendment. Melendez-Diaz, 129 S.Ct. at 2532.
Melendez-Diaz noted that its decision involved "little more than the application of our holding in Crawford," stating, "In short, under our decision in Crawford the analysts' affidavits were testimonial statements, *1230 and the analysts were `witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that petitioner had been granted a prior opportunity to cross-examine them, petitioner was entitled to "`be confronted with'" the analysts at trial." Melendez-Diaz, 129 S.Ct. at 2532, 2542. The court explained that "`gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility.' It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is introduced must (if the defendant objects) be introduced live." Melendez-Diaz, 129 S.Ct. at 2532, n. 1. (emphasis added.)
In so holding, the Court noted that the Sixth Amendment contemplates two classes of witnesses: "those against the defendant and those in his favor. The prosecution must produce the former; the defendant may call the latter." Melendez-Diaz, 129 S.Ct. at 2534. But jurisdictions are split on the meaning of terms such as "produce" and "available" in the context of Crawford. Compare Starr v. State, 269 Ga.App. 466, 604 S.E.2d 297 (2004) (admission of taped interview of child rape victim did not violate Sixth Amendment, even though child did not testify; child was in courthouse available for cross-examination at time tape shown); with Bratton v. State, 156 S.W.3d 689 (Tex.Crim.App.2005) (admission of statements of codefendants improperly admitted against defendant, even though codefendants were in courtroom at time the statements were read to jury and thereby available for cross-examination). In this case, the answer is provided within the text of the Crawford opinion itself: "Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. at 1369 n. 9. Here, M.R. appeared for cross-examination, unlike in Melendez-Diaz, where the defendant was required to subpoena the declarant to invoke his right to confrontation. L.W. had "`an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" United States v. Owens, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) (internal quotation marks and citations omitted).
Moreover, the defendant has raised this issue for the first time on appeal. Ordinarily, a defendant is not entitled on appeal to complain of errors not raised below. LSA-C.Cr.P. art. 841; see also LSA-C.E. art. 103(A)(1). However, the Louisiana Supreme Court has consistently held that the facial unconstitutionality of a statute on which a conviction is based is an error discoverable by the mere inspection of the pleadings and proceedings, without inspection of the evidence. Thus, this issue is subject to appellate review under LSA-C.Cr.P. art. 920(2), even though the defendant did not comply with the contemporaneous objection rule of LSA-C.Cr.P. art. 841. State v. Hoofkin, 596 So.2d 536 (La.1992) (per curiam); but see State v. Hatton, 2007-2377, p. 13 (La.7/1/08), 985 So.2d 709, 718 (a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court). However, just as the Supreme Court noted in Kennedy, this rule has only previously been applied in the context of challenges to the facial validity of substantive criminal statutes. Kennedy, XXXX-XXXX at p. 24, 957 So.2d at 775. Articles 325 and 327 concern the nature of the evidence admitted at trial and, as with any other ruling by a trial court admitting or excluding evidence, an *1231 objection is necessary to preserve the issue for review. In these circumstances, we decline to address the facial validity of Articles 325 and 327.

CONCLUSION
Having found no merit in the juvenile's assignments of error, the adjudication of delinquency and disposition are affirmed.

PROTECTIVE ORDER
Louisiana Children's Code article 328 requires that a videotape of a child's statement that is part of the court record be preserved under a protective order of the court to protect the privacy of the child. Accordingly, it is hereby ordered that the videotaped statement[7] of the victim be placed under a protective order. See State v. Ledet, 96-0142, p. 19 (La.App. 1st Cir.11/8/96), 694 So.2d 336, 347, writ denied, 96-3029 (La.9/19/97), 701 So.2d 163.
ADJUDICATION OF DELINQUENCY AND DISPOSITION AFFIRMED; PROTECTIVE ORDER ISSUED.
HUGHES, J., concurs.
NOTES
[1] The Louisiana Children's Code defines "child" as "any person under the age of twenty-one, including an emancipated minor, who commits a delinquent act before attaining seventeen years of age." LSA-Ch.C. art. 804(1).
[2] A "delinquent act" is defined as "an act committed by a child of ten years of age or older which if committed by an adult is designated an offense under the statutes or ordinances of this state, or of another state if the act occurred in another state, or under federal law, except traffic violations. It includes a direct contempt of court committed by a child." LSA-Ch.C. art. 804(3).
[3] Pursuant to LSA-Ch.C. art. 104(1), "[w]here procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with ... [t]he Code of Criminal Procedure in a delinquency proceeding...."
[4] Counsel objected to the admission of the interview on the basis of improper foundation and because the questions asked during the interview were leading and suggestive. He also objected to the competency of the victim to testify.
[5] Because L.W. challenges the constitutionality of a state statute, this Court sent notice to the Louisiana Attorney General's Office in accordance with LSA-R.S. 13:4448. State v. Schoening, XXXX-XXXX, p. 5 (La.10/17/00), 770 So.2d 762, 765-66 ("[T]he attorney general should be served a copy of the pleading which contests the constitutionality of a statute, so that he may choose whether or not to exercise his right to represent the state's interest in the proceedings." (Internal quotation omitted, footnote omitted.)). The Attorney General did exercise that right in this case and briefed the issues presented herein.
[6] Massachusetts General Laws, chapter 111, section 13 (1992) allows state prosecutors to introduce state forensic analysts' certifications as substitutes for live testimony at trial. Thus, prosecutors need not call the forensic analysts who prepared the reports. This Massachusetts statute was intended "to simplify proof of chemical analyses performed routinely and accurately by a public agency and `to reduce court delays and the inconvenience of having busy public servants called as witnesses'" in every case where drug analysis evidence is presented. Commonwealth v. Johnson, 32 Mass.App.Ct. 355, 589 N.E.2d 328, review denied, 412 Mass. 1105, 595 N.E.2d 326 (1992) (quoting Commonwealth v. Claudio, 26 Mass.App.Ct. 218, 220 n. 1, 525 N.E.2d 449 (1988), aff'd, 405 Mass. 481, 541 N.E.2d 993 (1989)). When its requirements are met, the certificate is admissible only as prima facie evidence that carries no particular presumption of validity, and the defendant may rebut if he doubts the certificate's correctness.
[7] State's Exhibit S-2.