COMMONWEALTH *vs.* ALBERTO VERDE.

Worcester. March 8, 2005. - May 19, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Confrontation of witnesses, Assistance of counsel. *Practice, Criminal,* Confrontation of witnesses, Argument by prosecutor, Assistance of counsel. *Evidence,* Authentication, Business record, Certificate of drug analysis. *Public Records.*

At the trial of an indictment charging trafficking in cocaine, the admission in evidence of certificates of drug analysis did not deny the defendant his right to confront witnesses against him guaranteed by the Sixth Amendment to the United States Constitution, despite the fact that the chemist who analyzed the substances in question and prepared the certificates did not testify, as such certificates are well within the public records exception to the confrontation clause of the Sixth Amendment. [282-285]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the prosecutor's closing argument, given the argument as a whole, the judge's instructions, and the evidence at trial [285-287]; moreover, the defendant failed to show that his counsel's actions fell below the level of an ordinary, fallible attorney or how the defendant was prejudiced, so as to constitute ineffective assistance [287].

INDICTMENT found and returned in the Superior Court Department on January 7, 1998.

The case was tried before *James P. Donohue,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Pamela Lindmark* for the defendant.

*Michelle R. King,* Assistant District Attorney, for the Commonwealth.

The following submitted briefs for amici curiae:

*John P. Zanini, Donald LaRoche, Robert C. Thompson, & Mary Lee,* Assistant District Attorneys, for the District Attorney for the Suffolk District & others.

*Thomas F. Reilly,* Attorney General, *& Susanne G. Reardon,* Assistant Attorney General, for the Attorney General & another.

IRELAND, J. This appeal raises the question whether, in light of *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*), the confrontation clause of the Sixth Amendment to the United States Constitution requires that laboratory technicians who analyze drugs seized as part of a criminal investigation authenticate their laboratory findings by appearing at a defendant's trial. Because we conclude that a drug certificate is akin to a business record and the confrontation clause is not implicated by this type of evidence, we answer in the negative and affirm the conviction.

After a Superior Court jury convicted the defendant of trafficking in cocaine (in an amount over one hundred but less than 200 grams), the trial judge sentenced the defendant to from ten to twelve years. The defendant appealed, claiming a number of errors, and we transferred this case from the Appeals Court on our own motion.

*Facts and procedural background.*

We recount the relevant facts, reserving certain details for our discussion. On July 25, 1997, the Worcester police executed a search warrant at the defendant's residence. After receiving the Miranda warnings, the defendant told police he had one-half ounce of cocaine in his pocket, which the police confiscated. In a bureau in the defendant's bedroom, the police found items commonly used in the drug trade, including a "cutting agent," a brown paper bag with "chunks" of "crack" cocaine and "regular" cocaine, a scale, packaging material, and plastic baggies. The police also found $15,615 in cash and a bankbook. These items were photographed before being removed from the bureau drawer. The white powder substances found in the bureau and in the defendant's pocket were analyzed at the University of Massachusetts Medical School laboratory. One substance was determined to be 90.96 grams of cocaine and the substance from the defendant's pocket was determined to be 13.77 grams of cocaine. The analysis of another substance removed from the bureau drawer indicated that it did not contain drugs.

At trial, pursuant to G. L. c. 111, § 113,[1] the Commonwealth introduced two certificates of analysis from the University of Massachusetts Medical School laboratory showing the weight

---

[1] General Laws c. 111, § 13, states in relevant part:

of the cocaine. The defendant, in turn, submitted the certificate of analysis of the other substance, indicating that it was not a narcotic but rather lidocaine (the dilutant). Although admitting that he had one-half ounce of cocaine on his person, the defendant testified that he only had twenty-eight grams in his bureau. His defense was that the police mixed lidocaine with the cocaine in the bureau into "a big ball" to arrive at the total amount of 90.96 grams.

The defendant's expert went to the University of Massachusetts Medical School laboratory on the first day of the trial to weigh the drugs himself. The expert testified that the first scale he used was not functioning properly, but that he was able to get an accurate reading from a second scale. The total weight of the cocaine, when weighed by the defendant's expert, was 102 grams. He testified that the difference in the amount from the 104.73 grams determined by the chemist was likely due to the evaporation of a "volatile material" mixed with the cocaine. Although the defendant's expert agreed that the total weight was more than one hundred grams, he testified that he thought the concentration of cocaine stated on the certificate of analysis was misleading. However, he further testified that he could not determine how inaccurate it might be because he "didn't have enough time to really study all the data" and a piece of data was missing regarding how the analyst made the standard concentrations for quantifying the cocaine in the sample.

The laboratory manager at the University of Massachusetts

"The analyst or assistant analyst of the . . . University of Massachusetts medical school shall upon request furnish a signed certificate, on oath, of the result of the [chemical] analysis [of a narcotic drug submitted to it by police authorities] . . . and the presentation of such certificate to the court by any police officer . . . shall be prima facie evidence that all the requirements . . . have been complied with. This certificate shall be sworn to . . . and the jurat shall contain a statement that the subscriber is the analyst or an assistant analyst of the department. When properly executed, it shall be prima facie evidence of the composition, quality, and net weight of the narcotic or other drug . . . ."

The purpose of G. L. c. 111, § 13, is to reduce court delays and the inconvenience of having the analyst called as a witness in each case. See *Commonwealth* v. *Claudio*, 26 Mass. App. Ct. 218, 220 n.1 (1988), *S.C.*, 405 Mass. 481 (1989), and cases cited.

Medical School, a rebuttal witness for the prosecution, testified that the chemist who analyzed the drugs was unavailable to testify because she was on maternity leave. He further testified that he personally examined the test results as to the purity and weight of drugs and he agreed with the results reported on the certificates.

*Discussion.*

1. *Confrontation clause.* The defendant argues that the admission of the drug certificates of analysis denied him his constitutional right to confrontation because the chemist who analyzed the substances and prepared the certificates did not testify.[2] This issue was presented first to this court in *Commonwealth* v. *Slavski*, 245 Mass. 405 (1923), and again nearly fifty years later in *Commonwealth* v. *Harvard*, 356 Mass. 452 (1969). In both cases, this court held that because the records relating to the analysis of intoxicating liquor or drugs were merely records of primary fact, with no judgment or discretion on the part of the analysts, and were admitted only as prima facie evidence, their admission did not violate a defendant's right to confrontation. See *Commonwealth* v. *Harvard, supra* at 461-463; *Commonwealth* v. *Slavski, supra* at 417-418. The defendant, however, argues that these cases no longer apply because of the United States Supreme Court's recent decision in *Crawford, supra* at 61, 68, holding that "testimonial" hearsay statements are barred under the confrontation clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the court. We disagree with the defendant's proposed application of *Crawford* to evidence of this nature.

Although the Court left "for another day any effort to spell out a comprehensive definition of 'testimonial,' " it provided that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial;

---

[2]The Commonwealth argues that the defendant failed to preserve this issue for appeal because he did not object at trial. We disagree. The failure to object was excusable, as *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*), was decided after the defendant's trial and the filing of his notice of appeal in the Superior Court.

and to police interrogations." *Id.* at 68. The Court noted that "[t]hese are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* However, the Court also recognized that "[t]here were always exceptions to the general rule of exclusion" of hearsay evidence and that several were well established when the confrontation clause was enacted. *Id.* at 56. Specifically, the Court suggested in dictum that a business or official record would not be subject to its holding as this exception was well established in 1791. *Id.*[3]

One acknowledged exception to the confrontation clause is a public record, "an ancient principle of the common law, recognized at the time of the adoption of the Constitution." *Commonwealth* v. *Slavski, supra* at 415, citing J. Wigmore, Evidence §§ 1395-1398 (1923). See *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 545 (1988) (noting public records and dying declarations as acknowledged exceptions to confrontation requirements when Massachusetts Constitution was adopted). In addition, it is well established in Massachusetts that "a record of a primary fact made by a public officer in the performance of official duty is or may be made by legislation competent prima facie evidence as to the existence of that fact." *Commonwealth* v. *Slavski, supra* at 417. However, "records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible in evidence as public records." *Id.*

Certificates of chemical analysis are neither discretionary nor based on opinion; rather, they merely state the results of a well-recognized scientific test determining the composition and quantity of the substance. *Commonwealth* v. *Harvard, supra* at 462. See *Commonwealth* v. *Westerman*, 414 Mass. 688, 699-700 (1993). Additionally, the certificate is admissible only as prima

---

[3]It appears as though the *Slavski* decision anticipated the *Crawford* holding. *Commonwealth* v. *Slavski*, 245 Mass. 405, 413-418 (1923). The exhaustive discussion in the *Slavski* decision on the confrontation clause and its well-recognized exceptions, such as dying declarations and public records, closely resembles the discussion of the historical aspects of the confrontation clause in *Crawford.*

facie evidence of the composition, quality, and weight of the substance, G. L. c. 22C, § 39, which a defendant may rebut if he doubts its correctness, as the defendant did in this case. Accordingly, these drug certificates are well within the public records exception to the confrontation clause.[4]

Furthermore, we do not believe that the admission of these certificates of analysis implicate "the principal evil at which the Confrontation Clause was directed . . . particularly its use of *ex parte* examinations as evidence against the accused." *Crawford*, *supra* at 50. The documentary evidence at issue here has very little kinship to the type of hearsay the confrontation clause intended to exclude, absent an opportunity for cross-examination. *Id.* at 51-53. Rather, it is akin to a business or official record, which the Court stated was not testimonial in nature. *Id.* at 56.

In this case, the only defense was that, while the defendant possessed cocaine, he did not have more than one hundred grams of cocaine. The defendant was free to rebut the information in the certificate, and indeed did so. The substance itself was available for the defendant's expert to weigh and analyze. Having done so, the defendant's expert testified that there were over one hundred grams of cocaine.[5] He disputed only the purity of the cocaine as recorded on the certificate. Contrary to the

---

[4]Other jurisdictions confronting this issue have reached similar conclusions. See *Perkins* v. *State*, 897 So. 2d 457, 462-465 (Ala. Crim. App. 2004) (autopsy report admissible under business records exception); Smith *vs.* State, Ala. Crim. App., No. CR-02-1218, slip op. at 7-9 (April 30, 2004) (autopsy report is business record and not testimonial but should not have been admitted without coroner's testimony because report contained opinion); *People* v. *Johnson*, 121 Cal. App. 4th 1409, 1411-1413 (2004) (laboratory report is routine documentary evidence that does not violate confrontation clause); *State* v. *Thackaberry*, 194 Or. App. 511, 516 (2004) (laboratory report of urinalysis was "analogous to — or arguably even the same as — a business or official record").

However, two jurisdictions have reached a contrary conclusion. See *Las Vegas* v. *Walsh*, 91 P.3d 591, 595, modified, 100 P.3d 658 (Nev. 2004) (affidavit made by nurse, pursuant to statute, was testimonial and not admissible to show presence of alcohol in blood because affidavit was prepared solely for prosecution's use at trial); *People* v. *Rogers*, 8 A.D.3d 888, 891-892 (N.Y. 2004) (blood test report prepared by private laboratory in anticipation of litigation was not admissible as business report).

[5]As long as the mixture contains cocaine (which it did) and weighs in excess of the threshold amount (which it also did), the purity of the cocaine

defendant's argument, the analyst was not required to testify simply because the defendant offered evidence to rebut the certificate. Rather, as the judge properly instructed, the jury were free to credit this testimony and to discredit the certificate of analysis as they saw fit. Therefore, we conclude the defendant's confrontation rights were not violated.

2. *Other issues.* The defendant also claims errors in the prosecutor's closing statements and argues that his defense counsel was ineffective.

a. *Prosecutor's closing remarks.* The defendant argues that the prosecutor created a substantial risk of a miscarriage of justice by violating the bounds of proper closing argument. Additionally, the defendant argues that these errors were prejudicial in light of two objectionable statements that the prosecutor made during the trial.[6] As no objection was made to the prosecutor's closing argument, we limit our review to whether there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978). We analyze the prosecutor's remarks considering the argument as a whole, the judge's instructions to the jury, and the evidence at trial. *Commonwealth* v. *Beland*, 436 Mass. 273, 289 (2002), citing *Commonwealth* v. *Mello*, 420 Mass. 375, 380 (1995). However, as the defendant fails to cite authority supporting his specific claims of error, these arguments warrant only brief discussion.

First, the defendant argues that the prosecutor improperly

---

need not be proved to establish the offense of trafficking. G. L. c. 94C, § 32E (*b*) (3). See *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 493 n.4 (1991). The purity of the substance may be relevant as circumstantial evidence that substances are possessed with an intent to distribute, and not for personal use. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 603-604 (1992); *Commonwealth* v. *Sabetti*, 411 Mass. 770, 779 (1992); *Commonwealth* v. *Montanez*, 410 Mass. 290, 305-306 (1991).

[6] When the Commonwealth asked the defendant whether his assets had been seized by the State, the judge immediately instructed the jury that the issue had "absolutely nothing to do with this case" and they should "[p]ut [the issue] out of your mind . . . ." Later, the judge sustained the defendant's objection when the Commonwealth asked the defendant how many years he had been selling cocaine. The judge further instructed that the question was improper and excluded. The judge's immediate curative instructions in these instances remedied whatever error (if any) arose in these questions. *Commonwealth* v. *Lodge*, 431 Mass. 461, 471-472 (2000).

vouched for the credibility of two witnesses by commenting on their integrity when telling the jury, "[Y]ou heard from Officer Williams and you heard from Officer Burgos, and I suggest to you that they are two fine police officers who have very calm demeanors . . . ." While the characterization of the witnesses as "fine police officers" would have been better left unsaid, it was not reversible error. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 521 (1987) ("It is not improper to make a factually based argument that, due to the demeanor, disclosed circumstances, and appearance of a witness, a particular witness should be believed or disbelieved"). Moreover, the judge gave detailed instructions on the jury's role in determining the credibility of each witness, specifically instructing them to "use your own good sound common sense and judgment, and . . . come to your own conclusion as to the credibility of any of the witnesses."

The defendant also argues that the prosecutor improperly attempted to shift the burden to him by suggesting that the defendant had a motive to testify. This argument is without merit, as the prosecutor was properly arguing that, having taken the witness stand, the defendant was subject to cross-examination with respect to his underlying motives for testifying.

Next, the defendant argues that the prosecutor erred in attempting to instruct the jury on the elements of the charged offense. Again, this argument is without merit. When the prosecutor began describing the offense of possession to the jury, the judge interrupted to state that he would explain the law to the jury and directed the prosecutor to go ahead with the facts. As the prosecutor did not have the opportunity to state the elements of the crime charged, the defendant was not prejudiced and there was no error.

Last, the defendant argues that the prosecutor misstated the evidence by remarking that the cocaine had been evaporating.[7]

---

[7] "Both, both chemists . . . testified they were not surprised that with the passage of four years, that the cocaine has evaporated. And I thought that was a very good example that [the defense expert] used with the perfume, because it makes it comprehendible, it makes it understandable that in fact the cocaine

As evidenced by the transcript, the prosecutor, in the next sentence, clarified that it was understandable that the volatile substance mixed with the cocaine would eventually evaporate over time. Taken in context, that statement was correct and there was no error.

Having reviewed the closing argument, as well as the judge's instructions to the jury and the relevant portions of the transcript, we conclude that the prosecutor's closing argument as a whole did not create a substantial risk of a miscarriage of justice.

b. *Ineffective assistance of counsel.* The defendant also argues that his defense counsel rendered ineffective assistance by failing adequately to prepare for trial, to pursue certain discovery regarding the procedures and methods used by the Commonwealth to analyze the drug mixture, accurately to recount in her closing argument the expert witness's testimony concerning the changing weight of the drug mixture, and to object to the prosecutor's improper comments and questions during closing argument. We disagree. In order to prevail on a claim of ineffective assistance, the defendant bears the burden of proving that the behavior of counsel fell below that of an ordinary, fallible lawyer and that such failing "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Concerning the first three alleged errors, the defendant has stated, in a cursory fashion without citation to authority, what he perceived to be the errors of his attorney but failed to submit any analysis supporting his claims of error. Accordingly, the defendant failed to show how his counsel's actions fell below the level of an ordinary, fallible attorney or how he was prejudiced. Furthermore, as there was no reversible error in the prosecutor's closing argument, it was not ineffective assistance of counsel to fail to object. See *Commonwealth* v. *Murphy*, 442 Mass. 485, 509 (2004).

---

has been mixed with a substance. [The defense expert] called it volatile, as did [the laboratory manager]. That ultimately when it's touched by the air or when it's transferred, when it's weighed, that it eventually evaporates with the passage of time, and that's what happened."

The actual testimony was that there was a "volatile material in the sample" that was evaporating.

*Conclusion.*

Because we conclude that the certificates of analysis at issue in this case are akin to a business or official record, and therefore, would not be subject to the holding in the *Crawford* case, and because we find no merit in the other claims of error, we affirm the defendant's conviction.

*So ordered.*