COMMONWEALTH *vs.* FRANCISCO PIMENTEL.

No. 06-P-1880.

Middlesex. October 8, 2009. - February 3, 2010.

Present: RAPOZA, C.J., DUFFLY, & CYPHER, JJ.

*Controlled Substances. Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses. *Evidence,* Certificate of drug analysis, Scientific test, Expert opinion. *Error, Harmless.*

At the trial of indictments charging, inter alia, trafficking in heroin and distribution of heroin, the erroneous admission in evidence of drug certificates of analysis, without testimony from an analyst, in violation of the defendant's constitutional right of confrontation, was not harmless beyond a reasonable doubt, where the certificates provided significant evidence of the nature of the substances as heroin and were the only definitive evidence of the weight of the packages obtained by police in controlled purchases from the defendant; therefore, this court reversed the judgments against the defendant and set aside the verdicts. [238-240]

INDICTMENTS found and returned in the Superior Court Department on May 13, 2003.

A pretrial motion to suppress evidence was heard by *Regina L. Quinlan,* J., and the cases were tried before *Paul A. Chernoff,* J.

*Debra S. Krupp,* Committee for Public Counsel Services, for the defendant.

*Lisa A. Szulborski,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. This case comes before us by an order of remand of the United States Supreme Court, for further consideration in the light of its decision in *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009).

*Procedural background.* The defendant, Francisco Pimentel, was convicted by a Superior Court jury in May, 2006, on three indictments charging trafficking in heroin, G. L. c. 94C,

§ 32E(*c*)[1]; three indictments charging distribution of heroin, G. L. c. 94C, § 32(*a*), as a second and subsequent offense, G. L. c. 94C, § 32(*b*)[2]; and six indictments charging violation of the Controlled Substances Act within a school zone, G. L. c. 94C, § 32J. This court affirmed the convictions in an unpublished memorandum and order pursuant to Appeals Court rule 1:28, in January, 2008. *Commonwealth* v. *Pimentel*, 71 Mass. App. Ct. 1103 (2008). Following the denial of his request for further appellate review, the defendant's petition for certiorari was granted by the Supreme Court, and on June 29, 2009, the Supreme Court ordered the judgments vacated and remanded the case to this court. *Pimentel* v. *Massachusetts*, 129 S. Ct. 2857 (2009).

*Factual background.* Only a brief summary of the principal facts is necessary. The defendant became the object of an investigation by the cross borders initiative task force (CBI) beginning in January, 2003. The CBI is a multi-jurisdictional task force formed in 1995 by the Lowell police, the State police, and the Federal Drug Enforcement Administration (DEA) to combat narcotics trafficking in the northern tier of central and eastern Massachusetts. In this case, the CBI obtained the assistance of a cooperating witness who was a convicted heroin dealer and who agreed to make controlled buys of heroin, while assisted and closely monitored by Lowell and State police and DEA special agents. Six controlled buys were made from the defendant and an employee at a convenience store operated by the defendant in Lowell.

*The case on remand.* The single issue in this remand is whether the admission of the five certificates of drug analysis, which were introduced in violation of the defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution because they were not accompanied by testimony of the analyst and he had no prior opportunity to cross-examine the analyst, was harmless beyond a reasonable doubt. "Absent a

---

[1]One indictment charged trafficking in an amount with a weight of twenty-eight grams or more, but less than one hundred grams. The other two indictments involved amounts weighing fourteen grams or more, but less than twenty-eight grams.

[2]Prior to sentencing, the Commonwealth filed to dismiss by nolle prosequi so much of each indictment as charged a second and subsequent offense.

showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial." *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009), quoting from *Crawford* v. *Washington*, 541 U.S. 36, 54 (2004).

In his brief on direct appeal, the defendant cited his objections to the introduction in evidence of the drug analysis certificates at trial. Acknowledging that *Commonwealth* v. *Verde*, 444 Mass. 279 (2005), held that the Sixth Amendment confrontation right is not implicated when certificates of drug analysis are introduced in evidence without the testimony of the analyst, the defendant cogently argued that, based on *Crawford* v. *Washington*, a number of cases from other jurisdictions decided after *Verde* had concluded that laboratory reports are testimonial. While the defendant also acknowledged that this court would be bound by *Verde*, he nevertheless urged that the *Verde* decision be reexamined. Our unpublished decision made no reference to this argument.

*Discussion.* Because the defendant objected to the introduction of the drug analysis certificates at trial and raised the *Crawford* issue in his direct appeal while *Melendez-Diaz* was pending, the admission of the drug analysis certificates without making the analyst available was a constitutional error, and we must review the record under a harmless beyond a reasonable doubt standard. *Commonwealth* v. *Vardinski*, 438 Mass. 444, 452 (2003), and cases cited. *Commonwealth* v. *Tyree*, 455 Mass. 676, 700-702 (2010). That standard requires that we determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman* v. *California*, 386 U.S. 18, 23 (1967), quoting from *Fahy* v. *Connecticut*, 375 U.S. 85, 86-87 (1963).

"To make that determination, we examine a number of factors, including the importance of the evidence in the prosecution's case, the frequency of reference to the evidence, whether it was cumulative of other evidence and whether the other evidence against the defendant was overwhelming." *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 (1999). We also consider "the relationship between the evidence and the premise of the defense." *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983).

The Commonwealth principally argues that the drug analysis

certificates were not of paramount importance and were cumulative of other evidence that the substances in issue were heroin. The Commonwealth relies on the testimony and experience of a State trooper and a DEA special agent, as well as the testimony and role of the cooperating witness. However, after a thorough search of the record, we conclude there was a dearth of evidence of the weight and nature of the substances independent of the drug analysis certificates.

A State trooper and a DEA special agent testified at some length on the packaging[3] of heroin, its street value, and the circumstances of the cooperating witness's arrangements with the defendant to order and buy quantities of heroin. Experienced investigators may testify to "describe how drug transactions occur on the street," Commonwealth v. Little, 453 Mass. 766, 769 (2009), but at most, such testimony constitutes circumstantial evidence of drug distribution and not evidence of either the weight or the nature of the drug. We here are concerned with more than the sufficiency of the evidence.

The word "heroin" was regularly used in describing the packaged substances obtained in the controlled buys, but at no time did the police or the cooperating witness refer to objective evidence, criteria, or field tests; they also did not articulate how their expertise permitted them to identify the substances as heroin. "Proof that a substance is a particular drug need not be made by chemical analysis"; upon appropriate findings by the trial judge, the experience of police or a drug-user "would . . . permit him to give an opinion as to what drug a particular substance was." Commonwealth v. Dawson, 399 Mass. 465, 467 (1987).[4] Here, no such opinions were proffered by the investigators or the cooperating witness. Moreover, the defendant did not testify, and there was no evidence that he specifically identified, admitted, or referred to any of the packages as heroin.[5]

---

[3] It cannot be said that the form of packaging can prove beyond a reasonable doubt that the substance is a particular drug. It is a fair inference that a counterfeit drug, see G. L. c. 94C, § 32G, would be packaged in conventional ways and also might not be distinguishable by appearance.

[4] "We suspect it would be a rare case in which a witness's statement that a particular substance looked like a controlled substance would alone be sufficient to support a conviction." Commonwealth v. Dawson, supra at 467.

[5] There is no merit in the Commonwealth's assertion that whether the

Finally, the packages obtained in the controlled buys and the certificates of analysis were admitted in evidence together, and the prosecutor in closing argument read the quantities and weights from some of the certificates, essentially relying on them as evidence of trafficking in heroin.[6] The defendant emphasized that there was no direct observation that the cooperating witness received the packages from the defendant and generally challenged his credibility. However, the prominence of the certificates was not diluted by any other evidence.

We conclude in these circumstances that the certificates provided significant evidence of the nature of the substances as heroin and were the only definitive evidence of the weight of the packages. Because we conclude that the error in their admission was not harmless beyond a reasonable doubt, the convictions cannot stand.

*Judgments reversed.*

*Verdicts set aside.*

---

substances were heroin was not a live issue at trial. Defense counsel was hardly in a position to challenge the admission of the certificates in evidence where the judge admitted them without questioning the grounds for objection or inviting argument. See *Commonwealth* v. *Melendez-Diaz, ante* 229, 235 (2010).

[6]The certificates are DEA forms, signed by a forensic chemist who conducted the analyses in New York, and were accompanied by a notarized jurat in compliance with G. L. c. 111, § 13.

The five certificates of analysis stated the following:

1. 100 bags powder marked with the logo "It's Hot": 37.2 grams.

2. 250 bags powder marked with the logo "It's Hot": 56.2 grams, and 200 bags powder marked with the logo "It's Hot": 48.8 grams.

3. Approximately 1,000 bags marked with the logo "Mo Money": 158 grams.

4. Approximately 500 bags powder marked with the logo "Mo Money": 106.3 grams.

5. Approximately 1,700 bags powder marked with the logo "Mo Money" and 50 bags marked with the logo "It's Hot": 266.3 grams.