Sanders, Janet L., J.
The man whose case led to the Supreme Court’s announcement of a rule which changed the legal landscape in Massachusetts is now before this Court asking that I apply that rule to the above captioned matter and that he be afforded the same remedy already granted to him in the first case— namely a new trial. At first blush, that would seem only fair, since the two cases were tried within months of each other and the error claimed is the same in both. There is an important difference between the case that went to the highest court and the one now before this Court: the defendant’s conviction in the instant case was affirmed on appeal so that it is before me on collateral review. Because I conclude that the Supreme Court’s decision in Melendez-Diaz v. Massachusetts, *281 557 U.S. _, 129 S.Ct. 2527 (2009), constituted a new rule and therefore does not apply retroactively to criminal cases on collateral review, the defendant cannot use it to overturn his conviction here. His Motion for New Trial must therefore be Denied.
BACKGROUND
Because the procedural background of the case is critical to my decision, it merits some discussion. The case began on April 16, 2004 with the indictments of the defendant by a Plymouth County grand juiy on two counts of trafficking in cocaine and one count of possession of heroin with intent to distribute it. The events giving rise to these charges occurred while the defendant was out on bail on another case where he faced similar charges in Suffolk Counly (the “Suffolk case”). In September 2004, before the instant case came to trial, the defendant was convicted in the Suffolk case and sentenced to a state prison term.
As the Suffolk case proceeded to trial, the defendant was litigating this case in Plymouth County. After losing a motion to suppress evidence, he came before this judge for a juiy-waived trial on the heroin and cocaine charges. In order to satisfy its burden of showing that the substances at issue were in fact class A and class B substances and that the class B substance exceeded the weight necessary for a trafficking charge, the Commonwealth introduced copies of the certificates of analysis from the state crime lab. The defendant — represented by appointed counsel — did not object to their admission. On May 5, 2005, the defendant was convicted and he was sentenced to the minimum mandatory term of ten years in prison on one of the trafficking charges, with three-year concurrent sentences on the remaining charges. These sentences were concurrent with the sentence that the defendant had received in his Suffolk case, where he was represented by different appointed counsel.
On November 13, 2007, the Appeals Court affirmed the defendant’s Plymouth Counfy convictions in an unpublished Rule 1:28 decision. Commonwealth v. Diaz, 70 Mass.App.Ct. 1110 (2007). The defendant’s primary argument on appeal concerned the denial of his motion to suppress evidence. No issue was raised on appeal about the admission of the drug certificates. The Supreme Judicial Court denied further review on February 28, 2008, so that judgment in the case became final. 450 Mass. 1110 (2008).
In the meantime, the Suffolk case had taken a different route. Unlike the instant case, counsel in the Suffolk case had objected to the admission of the drug certificates, relying on Crawford v. Washington, 541 U.S. 36 (2004). Following the defendant’s conviction, counsel continued to press her objection on appeal. The Appeals Court rejected the claim, relying on Commonwealth v. Verde, 444 Mass. 279 (2005), decided just two weeks after the defendant’s conviction on the Plymouth County charges. In Verde, the SJC expressly held that the admission of certificates of analysis did not run afoul of the Sixth Amendment’s confrontation clause.
After the SJC denied further review of the Suffolk case, the United States Supreme Court accepted cer-tiorari. In a decision that stunned many, the Court held in a five-to-four decision that drug certificates are within that category of out-of-court testimonial statements whose admission in evidence against a criminal defendant trigger the protections of the Sixth Amendment’s confrontation clause. Melendez-Diaz v. Massachusetts, 557 U.S. __, 129 S.Ct. 2527 (2009). The case was remanded for a determination as to whether the admission of the certificates without live testimony was harmless error. The Appeals Court concluded that it was not, and vacated the defendant’s conviction, ordering a new trial in the Suffolk case. Commonwealth v. Melendez Diaz, 76 Mass.App.Ct. 229 (2010).
Two months later, the defendant filed a motion for a new trial in the Plymouth case — the motion now before me.
DISCUSSION
Although the Supreme Court’s decision in Melendez-Diaz may have broken new legal ground, resolution of the instant motion is guided by principles established long before that decision. In Teague v. Lane, 489 U.S. 288, 311 (1989), the Supreme Court held that new constitutional rules should always be applied retroactively to criminal cases on direct review but, with certain limited exceptions, should not be applied retroactively to cases on collateral review. In reaching this conclusion, a plurality of the Court adopted the approach of Justice Harlan first articulated in his concurring opinion in Mackey v. United States, 401 U.S. 667, 675 (1971). In Mackey, Harlan had emphasized the importance of “leaving concluded litigation in a state of repose” and thus deciding federal habeas petitions based on the law prevailing at the time the conviction became final rather than on the basis of intervening changes in constitutional interpretation. Mackey, 401 U.S. at 682; see also DeSist v. United States, 394 U.S. 244, 262-63 (1969) (Harlan, concurring). Following that approach, the Court determined in Teague that the defendant could not take advantage of a constitutional rule regarding jury selection which was announced after his conviction was affirmed on appeal, thus coming down squarely in favor of the principle of finality which the Court regarded as “essential to the operation of our criminal justice system.” The Court removed any doubt that this position was held by a majority of the justices by applying Teague’s rule of retroactivity in cases decided immediately thereafter. See, e.g., Penry v. Lynaugh, 492 U.S. 302, 313 (1989); Butler v. McKellar, 494 U.S. 407, 415 (1990).
The defendant here contends that Teague sets forth the law only with regard to federal habeas cases and that Massachusetts is free to adopt a more liberal *282 approach. See Danforth v. Minnesota, 552 U.S. 264, 279-83 (2008). The Supreme Judicial Court, however, has given every indication that it would apply the same analysis the United States Supreme Court used in Teague in determining whether criminal defendants can collaterally attack their convictions in state court by using decisions handed down after their own convictions became final. Thus, in Commonwealth v. Bray, 407 Mass. 296, 300 (1990), the SJC held that a criminal defendant was not entitled to a new trial based on a jury instruction which became erroneous only as a result of an SJC decision handed down after the defendant’s conviction had been affirmed on direct appeal. Relying on Teague, the SJC concluded that the later decision announced a new rule and could not be applied retroactively to cases on collateral review. See also Commonwealth v. Amirault, 424 Mass. 618, 638 (1997), quoting Bray with approval. In contrast, the SJC has retroactively applied new constitutional rules to cases already litigated in the trial court but still pending at the time a new rule is announced. See e.g. Commonwealth v. Vasquez, 456 Mass. 350 (2010) (applying Melendez-Diaz rule retroactively).[1]
This bright line distinction between cases still pending on appeal when a new rule is announced and those which have already concluded makes perfect sense when one considers the implications if no bright line were drawn. Without the distinction, the announcement of a new rule would set off a wave of new trials in matters long since closed, thereby undermining the principle of finality which the Supreme Court found to be so important. That could in turn discourage progress in the law and prove a major obstacle to its development. To prevent that inhibiting effect, both the United States Supreme Court and the SJC have held that the definition of a “new rule” for purposes of determining retroactivity must be broadly inclusive. Thus, a “rule counts as new for this purpose even if it is the logical extrapolation of a principle already stated in prior decisions.” Commonwealth v. Amirault, supra; see also Butler v. McKellar, 494 U.S. 407, 415 (1990) (rule may still be deemed to be new even if it is within the “logical compass” of or “controlled” by an earlier decision).
Turning then to the case before this Court, I must first determine whether the rule announced in the defendant’s Suffolk case constitutes a “new rule” for purposes of retroactivity. The defendant claims that it is not, arguing that the Melendez-Diaz holding was essentially compelled by Crawford v. Washington, 541 U.S. 36 (2004), where the Supreme Court held that the use of a non-testifying person’s statement could not be admitted into evidence at a criminal trial without violating the confrontation clause. In its Opposition, the Commonwealth argues that Melendez-Diaz was not dictated by precedent existing at the time the defendant’s conviction became final, as evidenced by the SJC’s own decision in Commonwealth v. Verde, 444 Mass. 279 (2005). This Court agrees. Indeed, the closeness of the vote in the Melendez-Diaz case itself is the best evidence that the Supreme Court was announcing a new rule — a rule which, as Justice Kennedy put it in his dissent, “sweeps away an accepted rule governing the admission of scientific evidence” which had been in place for almost a century. 129 S.Ct. at 2543.
The prohibition against retroactive application of a new rule to cases on collateral review does contain two exceptions, but they are quite limited. The first is where the new rule places certain kinds of private, individual conduct formerly considered criminal beyond the reach of the criminal law-making authority to prohibit. Teague v. Lane, 489 U.S. at 311. Clearly, this case does not fall within that exception. The second exception applies to rulings which alter procedures that are “central to an accurate determination of innocence or guilt” in the “basic due process sense.” Teague v. Lane, 489 U.S. at 313. Thus, if the rule were not applied retroactively, the defendant would be deprived of that fundamental fairness that must underlie any criminal conviction. It has already been established, however, that Crawford itself does not fall within this exception. Whorton v. Bockting, 549 U.S. 406, 416-21 (2007) (declining to apply Crawford to cases on collateral review); see also Commonwealth v. Kartell, 71 Mass.App.Ct. 1124, further review denied, 451 Mass. 1108 (2008) (same). If Crawford does not fall within this second exception, then it follows that the Melendez Diaz ruling does not either.
Having so concluded, this Court need not reach the question of waiver and the consequence of trial counsel’s failure to object, which appears to be the focal point of the defendant’s arguments. Even if trial counsel had objected, the defendant would still be unable to avail himself of the benefit that he received in his Suffolk case. Cf. Commonwealth v. Bowler, 407 Mass. 304, 306-08 (1990) (reaching issue of waiver only after assuming that new rule did apply retroactively to case before it). The defendant does not contend that counsel in the Plymouth case was ineffective in his failure to object to admission of the drug certificates. Indeed, such a claim would have no merit: with Verde issued only two weeks after the defendant’s trial, it is clear that even the SJC did not consider there to be any doubt at that time that drug certificates were admissible without live testimony.
Of course, this Court may still order a new trial in order to avoid a substantial risk of a miscarriage of justice, as the Commonwealth appears to concede. “The power to upset a completely adjudicated case on this ground is an extraordinary one which should only be exercised in the most unusual circumstances,” however. Commonwealth v. Amirault, 424 Mass. at 646. Accordingly, a “substantial risk of a miscarriage of justice” has been determined to exist only in those cases where the court has a serious doubt that the defendant’s guilt has been fairly adjudicated. In other *283 words, the error has to be so grave as to convince this Court that the outcome of the trial would likely have been different if no error were made. Commonwealth v. McCoy, 456 Mass. 838, 850 (2010), quoting Commonwealth v. LeFaue, 430 Mass. 169, 174 (1999). In analyzing a claim under this standard, the court must be convinced that the error was not only prejudicial but that the failure to raise it at an earlier date was not the result of a reasonable tactical decision. Commonwealth v. Randolph, 438 Mass. 290, 298 (2002).
Here, there is no indication that there was any question that the items seized were controlled substances and that the cocaine was of a sufficient amount to constitute trafficking in that substance. That trial counsel essentially stipulated to the admission of the drug certificates without a live witness is strong evidence that he had no reason to doubt their accuracy. Rather, the issue was the legality of the stop and of the search of the motor vehicle in which the defendant was a passenger. In order to preserve that issue for appeal, counsel knew that a trial was necessary but opted to waive a jury in light of the limited chance of success on the merits. That this was the issue to litigate (and not whether the substances were cocaine and heroin) is apparent from the unpublished decision of the Appeals Court, which focused on that alone. In short, there was no substantial miscarriage of justice, there being no real doubt as the defendant’s guilt or the fairness of the trial that he received.
CONCLUSION AND ORDER
For all the foregoing reasons, the Motion for New Trial is DENIED.

 Because Vasquez involved a case on direct review, the SJC’s application of Melendez-Diaz there has no bearing on the question before this Court, which is whether the mle applies to a case on collateral review. Defense counsel’s reliance on Vasquez is therefore misplaced.