COMMONWEALTH *vs.* LUIS MELENDEZ-DIAZ.

Plymouth. April 5, 2011. - July 26, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Controlled Substances. Constitutional Law,* Retroactivity of judicial holding, Confrontation of witnesses. *Practice, Criminal,* Retroactivity of judicial holding, Confrontation of witnesses. *Evidence,* Certificate of drug analysis.

Discussion of the decision of the United States Supreme Court in *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2727, 2532 (2009), holding that a certificate of chemical analysis of a seized substance was inadmissible as evidence in a criminal trial in the absence of testimony from the analyst. [241-242]

This court concluded that the decision of the United States Supreme Court in *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2727, 2532 (2009), announced a "new" constitutional rule of criminal law, such that it did not apply retroactively on collateral review to convictions that were final before the new rule was announced [242-248]; therefore, given that a criminal defendant's convictions had already become final at the time the new rule was announced, this court declined to consider the defendant's argument that the futility exception to the doctrine of waiver should have applied in his case. [248]

INDICTMENTS found and returned in the Superior Court Department on April 16, 2004.

Following review by the Appeals Court, 70 Mass. App. Ct. 1110 (2007), a motion for a new trial, filed on April 21, 2010, was heard by *Janet L. Sanders,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Mary T. Rogers* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*Brownlow M. Speer & Donald S. Bronstein,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

CORDY, J. In *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527, 2532 (2009) (*Melendez-Diaz*), the United States Supreme

Court concluded that a certificate of chemical analysis, sworn to by a State laboratory analyst and reporting the weight and chemical makeup of a seized substance, came within the class of testimonial statements subject to the protections of the confrontation clause of the Sixth Amendment to the United States Constitution. Consequently, the certificate was inadmissable as evidence in a criminal trial in the absence of testimony from the analyst who performed the underlying forensic analysis. *Id.* The question raised in this case is whether the rule announced in *Melendez-Diaz* applies retroactively to cases on collateral review.[1]

The defendant asks us to apply the rule to his drug-related convictions that became final prior to the Supreme Court's decision.[2] We conclude that the rule announced in *Melendez-Diaz*, as it

---

[1]No circuit court of the United States Court of Appeals or State Supreme Court has considered the retroactivity of *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009) (*Melendez-Diaz*). Only one Federal District Court has held *Melendez-Diaz* to be retroactive to cases on collateral review. See Scott *vs.* Mule Creek State Prison, U.S. Dist. Ct., No. ED CV 07-909 SVW (PJW) (C.D. Cal. Dec. 28, 2010) (rule in *Melendez-Diaz* "an application of the *Crawford* [v. *Washington*, 541 U.S. 36 (2004) (*Crawford*),] rule of constitutional criminal procedure rather than the creation of an entirely 'new rule' "). A few Federal District Courts have concluded *Melendez-Diaz* is a "new rule" and not retroactive. See Vega *vs.* Walsh, U.S. Dist. Ct., No. 06-CV-6492 (ARR) (JO) (E.D.N.Y. April 22, 2010) (Vega). See also Adams *vs.* United States, U.S. Dist. Ct., No. Civ. A. 09-6152 GEB (D.N.J. May 10, 2011) (citing Vega); Espino-Rangel *vs.* Hollingsworth, U.S. Dist. Ct., No. 10-674-GPM (S.D. Ill. Nov. 1, 2010) (same); Galiana *vs.* McNeil, U.S. Dist. Ct., No. 08-20705-CIV (S.D. Fla. July 5, 2010) (same); Flournoy *vs.* Small, U.S. Dist. Ct., Civ. No. 08-2298-IEG (POR) (S.D. Cal. June 14, 2010) (same). Still other Federal District Courts do not consider whether *Melendez-Diaz* announced a new rule and jump to the conclusion that because *Crawford, supra,* announced a new rule that is not retroactive, see *Whorton* v. *Bockting*, 549 U.S. 406, 416-417 (2007), *Melendez-Diaz* similarly cannot be retroactive. See, e.g., Nardi *vs.* Pepe, U.S. Dist. Ct., Civ. A. No. 09-12166-RWZ (D. Mass. Feb. 8, 2011); Larkin *vs.* Yates, U.S. Dist. Ct., No. CV 09-2034-DSF (CT) (C.D. Cal. July 9, 2009); Louder *vs.* Coleman, U.S. Dist. Ct., Civ. A. No. 09-1124 (W.D. Pa. Dec. 10, 2009).

In the context of a petition for habeas corpus relief, the United States Court of Appeals for the First Circuit recently held that where a State conviction was made final after *Crawford*, but before *Melendez-Diaz, Crawford* did not represent " 'clearly established Federal law, as determined by the Supreme Court of the United States,' . . . as to whether admission of this evidence without the chemist being a witness violated the Confrontation Clause." *Likely* v. *Ruane*, 642 F.3d 99, 102 (1st Cir. 2011), quoting 28 U.S.C. § 2254(d)(1) (2006).

[2]The defendant in this case is the same person who was the defendant in the

relates to the applicability of the confrontation clause to certificates of chemical analysis (drug certificates), is a "new" rule within the meaning of *Teague* v. *Lane*, 489 U.S. 288 (1989) (*Teague*), and, as such, is not available to the defendant in this appeal from the denial of his motion for a new trial.

1. *The defendant's convictions.* The defendant was arrested on February 20, 2004, following a controlled drug purchase set up by the Marshfield and Abington police departments with the help of an informant. The informant made a telephone call for the purpose of purchasing cocaine. The defendant arrived shortly thereafter in a Ford Contour automobile. The informant, who had been given $630 in controlled "buy" money by an undercover officer, got into the back seat of the automobile and returned with several small bags of a white powdery substance, which the undercover officer believed to be cocaine. The automobile was stopped by Abington police shortly thereafter and both the defendant and a passenger were arrested. The vehicle was towed to a police department lot. A careful examination of the interior of the automobile led to the discovery of a secret compartment above the glove compartment in which was found the $630 in buy money, a number of small bags containing a white powdery substance, and a Tylenol bottle holding small bags containing a black tar-like substance as well as small bags containing a whitish beige rock substance.

During a two-day jury-waived trial, and without objection from the defendant, the substances sold to the informant and recovered from the secret compartment, along with drug certificates averring that the substances were cocaine and heroin, were admitted in evidence. See G. L. c. 111, §§ 12, 13.[3] On May 3, 2005, the defendant was convicted of two indictments

*Melendez-Diaz* case. The conviction that led to the Supreme Court decision arose from events that took place in Suffolk County on November 15, 2001. See *Commonwealth* v. *Melendez-Diaz*, 69 Mass. App. Ct. 1114 (2007), rev'd, 129 S. Ct. 2527 (2009). The conviction in this case arose from events that took place in Plymouth County on February 20, 2004.

[3]Pursuant to G. L. c. 111, § 12:

"The department [of public health] shall make, free of charge, a chemical analysis of any narcotic drug, or any synthetic substitute for the same, or any preparation containing the same, or any salt or compound thereof, and of any poison, drug, medicine or chemical, when submitted to it by police authorities or by such incorporated charitable organiza-

charging trafficking in cocaine, G. L. c. 94C, § 32E (b); and one indictment charging possession of heroin with intent to distribute, G. L. c. 94C, § 32 (a). He was sentenced to a ten-year mandatory term of imprisonment.[4]

The defendant's judgments of conviction in this case were affirmed by the Appeals Court, see Commonwealth v. Melendez Diaz, 70 Mass. App. Ct. 1110 (2007), and we denied further appellate review, 450 Mass. 1110 (2008). On June 25, 2009, after the defendant's convictions in this case had become final, the United States Supreme Court's decision in the Melendez-Diaz case was announced. The defendant subsequently filed a motion for a new trial that was denied.

2. Discussion. a. The Melendez-Diaz decision. In Melendez-Diaz, supra at 2542, five Justices[5] of the Supreme Court concluded that the inadmissibility of the drug certificates (in the

tions in the commonwealth, as the department shall approve for this purpose; provided, that it is satisfied that the analysis is to be used for the enforcement of law."

Pursuant to G. L. c. 111, § 13:

"The analyst or an assistant analyst of the department or of the University of Massachusetts medical school shall upon request furnish a signed certificate, on oath, of the result of the analysis provided for in the preceding section to any police officer or any agent of such incorporated charitable organization, and the presentation of such certificate to the court by any police officer or agent of any such organization shall be prima facie evidence that all the requirements and provisions of the preceding section have been complied with. This certificate shall be sworn to before a justice of the peace or notary public, and the jurat shall contain a statement that the subscriber is the analyst or an assistant analyst of the department. When properly executed, it shall be prima facie evidence of the composition, quality, and the net weight of the narcotic or other drug, poison, medicine, or chemical analyzed or the net weight of any mixture containing the narcotic or other drug, poison, medicine, or chemical analyzed, and the court shall take judicial notice of the signature of the analyst or assistant analyst, and of the fact that he is such."

[4]The defendant was also sentenced to other mandatory terms of imprisonment that the judge directed be served concurrently with the ten-year sentence.

[5]One member of the majority, Justice Thomas, concurred in the result on the limited ground that the drug certificates were admitted in the form of "affidavits" which " 'fall within the core class of testimonial statements' governed by the Confrontation Clause." Melendez-Diaz, supra at 2543 (Thomas, J., concurring), quoting Melendez-Diaz, supra at 2532.

absence of an opportunity to cross-examine the analyst) was "little more than the application" of the Court's decision in *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*),[6] a case involving the admission of the tape-recorded statement of a percipient but unavailable witness to a stabbing. The four dissenting Justices were of a very different view, asserting that the Court was sweeping away "an accepted rule governing the admission of scientific evidence"; a rule "established for at least 90 years . . . extend[ing] across at least 35 States and six Federal [Circuit] Courts of Appeals." *Melendez-Diaz, supra* at 2543 (Kennedy, J., dissenting, with whom Roberts, C.J., Breyer and Alito, JJ., joined). The dissenting opinion pointed out that the Court had based its remarkable conclusion, "disregard[ing] a century of jurisprudence," on two confrontation clause decisions, *Crawford, supra*, and *Davis* v. *Washington*, 547 U.S. 813 (2006), that said "nothing about forensic analysts." *Melendez-Diaz, supra* at 2543 (Kennedy, J., dissenting). Those cases, the dissenting Justices noted, stood only for:

> "the proposition that formal statements made by a conventional witness — one who has personal knowledge of some aspect of the defendant's guilt — may not be admitted without the witness appearing at trial to meet the accused face to face. But *Crawford* and *Davis* do not say — indeed, could not have said, because the facts were not before the Court — that anyone who makes a testimonial statement is a witness for purposes of the Confrontation Clause, even when that person has, in fact, witnessed nothing to give them personal knowledge of the defendant's guilt."

*Id.* at 2543 (Kennedy, J., dissenting).

b. *Retroactivity.* The rule of *Melendez-Diaz* is of no use to the defendant unless it is held to be retroactive to convictions already made final at the time it was decided. Federal law on

---

[6]*Crawford, supra*, overruled *Ohio* v. *Roberts*, 448 U.S. 56 (1980), which had held that a statement from an unavailable witness was admissible against a criminal defendant as long as the statement bore an "adequate 'indicia of reliability,' " which was found either by inference, if the statement fell into a "firmly rooted hearsay exception," or by a showing of "particularized guarantees of trustworthiness." *Id.* at 66.

the retroactive application of constitutional decisions is articulated in *Teague, supra.* In that case, the Supreme Court held that a "new" constitutional rule of criminal law does not ordinarily apply on collateral review to convictions that were final before the new rule was announced.[7] "Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton* v. *Bockting,* 549 U.S. 406, 416 (2007).

The Supreme Court in *Teague* acknowledged the difficulty of determining when a rule is new, and chose not to define a "new rule" except to state that, "[i]n general, . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." (Citations omitted.) *Teague, supra* at 301. The Supreme Court, since *Teague,* has given broad articulation to the meaning of when a rule is "new," thus limiting review in collateral challenges, and "validat[ing] reasonable, good-faith interpretations of existing precedents made by state courts" even though they are "contrary to later decisions." *Butler* v. *McKellar,* 494 U.S. 407, 414 (1990). See *Beard* v. *Banks,* 542 U.S. 406, 411 (2004), quoting *Graham* v. *Collins,* 506 U.S. 461, 468 (1993) (court must ascertain "legal landscape" existing at time conviction became final); *O'Dell* v. *Netherland,* 521 U.S. 151, 156 (1997) ("we will not disturb a final state conviction or sentence unless it can be said that a state court, at the time the conviction or sentence became final, would have acted objectively unreasonably by not extending the relief later sought in federal court").

---

[7]There are two exceptions to the rule announced in *Teague* v. *Lane,* 489 U.S. 288 (1989) (*Teague*). A new constitutional rule will apply retroactively if it (1) places certain primary conduct outside what can be prohibited by use of the criminal law; or (2) requires the observance of procedures "implicit in the concept of ordered liberty." *Id.* at 307, quoting *Mackey* v. *United States,* 401 U.S. 667, 693 (1971) (Harlan, J., concurring in part and dissenting in part). *Melendez-Diaz* does not come within these exceptions. See *Commonwealth* v. *Arnaut,* 78 Mass. App. Ct. 906, 906-907 & n.5 (2011), and cases cited.

The defendant asserts that *Melendez-Diaz* did not announce a new rule because it was "dictated by *Crawford*," that is, in the words of the Court's opinion, it was "little more than the application" of the new rule announced in *Crawford, supra.*[8] *Melendez-Diaz, supra* at 2542. The language used by the Court, however, is not conclusive in determining whether a rule is new. "[T]he fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*. Courts frequently view their decisions as being 'controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions reached by other courts." *Butler* v. *McKellar, supra* at 415. Nor is the existence of conflicting authority dispositive of the new rule inquiry. *Stringer* v. *Black*, 503 U.S. 222, 237 (1992). As the Supreme Court has stated: "Even though we have characterized the new rule inquiry as whether 'reasonable jurists' could disagree as to whether a result is dictated by precedent, the standard for determining when a case establishes a new rule is 'objective,' and the mere existence of conflicting authority does not necessarily mean a rule is new." *Williams* v. *Taylor*, 529 U.S. 362, 410 (2000), quoting *Wright* v. *West*, 505 U.S. 277, 304 (1992) (O'Connor, J., concurring). With this framework in mind, we look to the specific holding of *Melendez-Diaz* and the "legal landscape" existing at the time to determine whether it was, in fact, a new rule or one simply dictated by precedent. *Beard* v. *Banks, supra.*

It is beyond question that prior to *Crawford*, drug certificates were broadly considered admissible against a criminal defendant in the absence of the testimony of the analyst, often under the official or public records exception to the confrontation clause, "an ancient principle of the common law, recognized at the time of the adoption of the Constitution." *Commonwealth* v. *Slavski*, 245 Mass. 405, 415 (1923) (*Slavski*). In Massachusetts, for example, the issue of the admissibility of the results of basic chemical analyses was first addressed in *Slavski, supra* (admis-

---

[8]In *Whorton* v. *Bockting*, 549 U.S. 406, 416 (2007), the Supreme Court held that *Crawford* announced a new rule that did not fall under either *Teague* exception.

sion of certificates to prove alcoholic contents of "moonshine"), and again in *Commonwealth* v. *Harvard*, 356 Mass. 452 (1969) (admission of certificates of drug analysis). In both cases, this court concluded that admission of the records of results of the analysis did not violate the confrontation clause because they were merely records of primary fact that required no judgment or discretion by the analysts who prepared them. See *id.* at 461-463; *Slavski, supra* at 415-417 (analyzing admissibility of such records at common law dating back to 1780 and adoption of Massachusetts Declaration of Rights).

In *Crawford* itself, the Supreme Court explicitly left "for another day" any effort to spell out a comprehensive definition of what types of evidence would be considered "testimonial" (and therefore subject to the constraints of the confrontation clause) and specifically acknowledged that its "refusal to articulate a comprehensive definition [would] cause interim uncertainty." *Crawford, supra* at 68 & n.10. The Court also noted that certain types of records, by their nature, were nontestimonial and admissible pursuant to exceptions to the general rule of exclusion that were well established at the time the Bill of Rights was appended to the United States Constitution. See *Crawford, supra* at 56. See also *id.* at 76 (Rehnquist, C.J., concurring) ("[t]o its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records. . . . To hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process." [Citation omitted]).

Not surprisingly, after *Crawford* was decided, most courts continued to conclude that drug certificates (or their equivalent) remained outside the scope of that decision and, either as business records or as official records, were admissible as prima facie evidence without the testimony of the analyst. See, e.g., *United States* v. *Ellis*, 460 F.3d 920 (7th Cir. 2006) (medical records establishing presence of methamphetamine in defendant's system were nontestimonial business records); *Pruitt* v. *State*, 954 So. 2d 611 (Ala. Crim. App. 2006) (drug certificate not testimonial); *People* v. *Johnson*, 121 Cal. App. 4th 1409, 1411-1413 (2004) (laboratory report is routine documentary evidence whose admission does not violate confrontation clause);

*State* v. *Cunningham,* 903 So. 2d 1110 (La. 2005) (drug certificate nontestimonial business record under *Crawford*); *State* v. *Dedman,* 136 N.M. 561 (2004) (report of blood alcohol analysis not testimonial); *State* v. *O'Maley,* 156 N.H. 125 (2007), cert. denied, 129 S. Ct. 2856 (2009) (analysis of blood tests not testimonial); *State* v. *Thackaberry,* 194 Or. App. 511, 516 (2004) (laboratory report of urinalysis was "analogous to — or arguably even the same as — a business or official record").

Similarly, in *Commonwealth* v. *Verde,* 444 Mass. 279 (2005), we held that drug certificates were "well within the public records exception to the confrontation clause" because "[c]ertificates of chemical analysis are neither discretionary nor based on opinion; rather, they merely state the results of a well-recognized scientific test determining the composition and quantity of the substance." *Id.* at 283, 284. See *id.* at 283 (Supreme Court in *Crawford* "suggested in dictum that a business or official record would not be subject to its holding"). As we subsequently noted in *Commonwealth* v. *Vasquez,* 456 Mass. 350, 359 (2010) (applying *Melendez-Diaz* to cases on direct appeal), "[o]ur holding in *Verde* was not an aberration, and reflected the unsettled nature of confrontation clause jurisprudence in *Crawford*'s wake . . . ." See *id.* at 359 n.11, and cases cited. Indeed, it can be fairly said that the Supreme Court granted the petition for a writ of certiorari in *Melendez-Diaz* precisely so that it could resolve this very area of "interim uncertainty," that is, "[w]hether a state forensic analyst's laboratory report prepared for use in criminal prosecution is 'testimonial' evidence subject to the demands of the [c]onfrontation [c]lause as set forth in *Crawford* . . . ." *Likely* v. *Ruane,* 642 F.3d 99, 102-103 (1st Cir. 2011).

In sum, to the extent *Melendez-Diaz* classified this limited category of evidence as triggering the protections of the confrontation clause, it broke new ground and announced a new rule.[9]

We are careful to note the distinction between our holding in

---

[9]We note that the sweep of *Melendez-Diaz* was quite broad. See Vega *vs.* Walsh, U.S. Dist. Ct., No. 06-CV-6492 (ARR) (JO) (E.D.N.Y. April 22, 2010) (citing cases decided prior to *Melendez-Diaz* that held various scientific evidence to be nontestimonial in light of *Crawford*). We limit our holding on

this case and our holding in *Commonwealth* v. *Clarke, ante* 30, 31 (2011), where we concluded that *Padilla* v. *Kentucky,* 130 S. Ct. 1473 (2010) (*Padilla*), was to be applied retroactively to cases on collateral review. In *Padilla*, the Supreme Court was responding to "extensive changes in immigration law" that had occurred over two decades, and had transformed "a system where deportation was rare and often preventable by a favorable exercise of judicial or administrative discretion, to a system where deportation is a near-mandatory consequence of many convictions." *Commonwealth* v. *Clarke, supra* at 41, citing *Padilla, supra* at 1478-1480. In light of that transformation and the evolution of the professional standards and expectations of the legal community that had followed in its wake, the Supreme Court's conclusion that advice regarding the deportation consequences of a criminal conviction had long since become the duty of constitutionally competent counsel, was more akin to the affirmation of an existing constitutional obligation than the imposition a new obligation on the States and Federal government.[10] In contrast, the Supreme Court in *Melendez-Diaz* overruled a long-standing precedent relied on in more than thirty-five States (and throughout the Federal courts), plainly resulting in the imposition of a substantial "new obligation on the States." *Teague, supra* at 301. See *Melendez-Diaz, supra* at 2543 (Kennedy, J., dissenting).

In addition, as we noted in the *Clarke* case, the retroactivity of the rule in *Padilla* was fully implied in the Supreme Court's decision. First, the case of *Padilla* itself was a collateral challenge to Padilla's final convictions. See *Teague, supra* at 300 ("Retroactivity is properly treated as a threshold question, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied

---

the retroactivity of *Melendez-Diaz* to the category of records produced pursuant to G. L. c. 111, §§ 12 and 13. As to the retroactive effect of *Melendez-Diaz* in relation to other categories of records or reports, we reach no conclusions.

[10]In *Padilla* v. *Kentucky,* 130 S. Ct. 1473, 1482 (2010), the Supreme Court specifically referenced the performance guidelines and professional standards promulgated by a wide range of professional organizations, from the American Bar Association to the National Legal Aid and Defender Association and the Department of Justice, Office of Justice Program, dating back to 1995, in support of its conclusion that "authorities of every stripe . . . universally require defense attorneys to advise as to the risk of deportation for non-citizen clients."

retroactively to all who are similarly situated"). Second, the *Padilla* opinion explicitly addressed concerns that its holding would open the "floodgates" and disturb the finality of "convictions already obtained." *Padilla, supra* at 1484-1485. It explained that the finality of most convictions would not be disturbed because (1) professional norms of defense counsel had required advice on deportation consequences for over a decade; (2) claims of ineffective assistance of counsel are less frequent when a plea agreement has been reached due to potential loss of favorable terms; and (3) the ineffective assistance of counsel test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 689-690 (1984), requires defendants to meet the high bar of showing prejudice. *Padilla, supra.* Again, in contrast, the rule in *Melendez-Diaz* was rendered in a direct appeal, and the Court provided no similar guidance on the issue of retroactivity.

c. *Futility exception to the doctrine of waiver.* The futility exception was applied in *Commonwealth* v. *Vasquez, supra,* only to preserve a more favorable standard of review for a defendant whose conviction was not yet final when *Melendez-Diaz* was decided. *Commonwealth* v. *Vasquez, supra* at 355-359. Because we conclude that *Melendez-Diaz* is not retroactive, we need not reach the defendant's argument that the futility exception to the doctrine of waiver should apply in his case.

3. *Adopting a new rule of retroactivity.* We adopted the *Teague* rule in *Commonwealth* v. *Bray*, 407 Mass. 296, 300-301 (1990), but the Supreme Court has since made clear that States are not constrained by the analysis of *Teague* and may allow broader application of new constitutional rules than that mandated by Federal law. *Danforth* v. *Minnesota*, 552 U.S. 264, 288 (2008). While some State appellate courts have chosen to deviate from *Teague*, see, e.g., *State* v. *Smart*, 202 P.3d 1130, 1140 (Alaska 2009), we have yet to consider whether we should accept the invitation of the Supreme Court to do so. We decline to do so in this case, where we see no fundamental injustice or unfairness in applying *Melendez-Diaz* as a new rule with prospective effect.

4. *Conclusion.* The denial of the defendant's motion for new trial is affirmed.

*So ordered.*